EMMA HARDWICK, v. THOMAS HARDWICK, Appellant.

**Husband and wife:** ALIENATION OF AFFECTIONS: EVIDENCE. In an action for the alienation of a husband's affections, the declarations of the husband as to his affection for the wife made to her at the time he communicated defendants desire to separate them are admissible, but should be strictly limited to the state of their affection for each other and the effect of defendants influence upon the husband.

**Same.** In an action by the wife against her father-in-law for alienating her husband's affections and causing him to abandon her, in which she testified that the first trouble arose over her refusal to perform certain work, evidence that she was in good health at the time of the marriage but had broken down at the time of such refusal, was competent on the question of interference by defendant without cause. Same is true of evidence of defendant's treatment of her thereafter, of her temporary absence from home, and of defendant's notice to plaintiff and her husband to quit his home.

**Same.** Evidence that plaintiff was sick after her husband abandoned her, as tending to show her need of his care and the loss suffered, is competent.

**Same.** An inquiry on cross examination which is so general that an indefinite number of answers may be made having no reference to the issues should be excluded.

**Same.** Proof that a husband had instituted and dismissed a suit for divorce was admissible, in an action for alienation of affection and causing the husband to abandon plaintiff, where it was fairly inferable that defendant participated in the matter.

**Instructions.** It is error to submit an issue that is supported neither by allegation nor proof.

**Same.** An instruction relating to defendant's act in serving notice on plaintiff and her husband to quit premises belonging to him and occupied by all, was erroneous, in failing to state that he must have so acted with wrongful intent.

**Instruction:** BAD MORAL CHARACTER. In an action for alienating a husband's affections and inducing him to abandon his wife, where bad character was alleged in mitigation of damages, an instruction limiting the evidence of moral character to a test of the witness' credibility, and stating that the law presumes

that a witness of bad character is reforming, and also stating that the nearer the evidence of bad character approaches the time in question the greater its weight, was erroneous in all three respects.

**Evidence of defendant's statements:** RELEVANCY: INSTRUCTION.
9  Evidence of defendant's statements made to the husband relative to his seperation from his wife are admissible, on the question of their effect in breaking his affection for her, but the jury should be instructed not to consider the same in determining whether any such influence was in fact exerted by defendant, or that he made the statements.

*Appeal from Buchanan District Court.*— HON. A. S. BLAIR, Judge.

TUESDAY, MARCH 13, 1906.

ACTION for loss of consortium resulted in verdict and judgment for the plaintiff. Defendant appeals.— *Reversed.*

*E. E. Hasner* and *C. E. Ransier,* for appellant.

*Cook & Cook* and *R. E. Leach,* for appellee.

LADD, J.— The plaintiff, whose maiden name was Emma Stumma, had known George Hardwick all his life, and, after a few months' courtship, married him in the fall of 1895. As his mother was dead, it was arranged that they should live in the home of his father, the defendant, and, according to plaintiff's story, all went well for several years, until she objected to doing the work for John, her husband's brother. Then their troubles began, and finally culminated in the separation from her husband, which she attributes to the improper influence of defendant over his son. The evidence tends to sustain this charge, and, without entering upon a discussion of the facts of the case, we are content to say that there was no error in overruling the motion to direct a verdict.

II. After plaintiff had testified to the relations with her husband up to the time she refused to do the work for his

brother, and had related that she went to her mother's house to wait until it should be ascertained what defendant concluded to do concerning the matter, she was asked, "What did George say to you about that time in relation to his father, if anything? A. Why, he told me, of course, one night after we had retired, that his father wanted him to leave me. Q. Did that occur between you and George after you had retired at night? A. Yes, sir. Q. State what George's feeling was at that time? A. His feelings were so greatly overcome with grief that he held me so tight in his arms that he couldn't tell me from weeping. It seemed impossible for him to tell me. . · . . We didn't sleep any that night." Each question was objected to as incompetent, immaterial, and irrelevant, and the objections were overruled. Counsel for appellant strenuously insist that these rulings were erroneous. In the recent case of *Sexton v. Sexton,* 129 Iowa, 487, the admissibility of such evidence was so fully discussed that little need be added. The statement of George concerning his father's wishes is the particular matter to which exception is taken. But this was a part of the transaction described, and a declaration essential to give it character and meaning. It was proper to prove the state of affection existing between the husband and wife. Without this declaration, the scene described, the outburst of love and sorrow, would have had no signification. With it the extent of the affection of the one for the other was indicated in an impressive manner. It was not a communication within the confidences of the marital relation, but the rather a verbal act having reference to its severance. Moreover, the declaration was admissible in connection with the scene described as tending to prove the effect of defendant's influence, if any, exerted on the son. Ordinarily the declarations of a person not a party to the suit are not admissible in evidence. But this rule is not without exception. In a case like this, though the husband is not a party, his con-

*1. HUSBAND AND WIFE: alienation of affections: evidence.*

duct, as well as that of the defendant, is directly involved. The precise issue is whether the defendant has wrongfully and maliciously induced his son to separate himself and abandon plaintiff, as his wife, thus depriving her of the comfort, society, and support of her husband.  The nature of this issue is such that it was not only proper to show the declarations and act of defendant in respect to his son's marriage relation, but also to show the effect of these upon the son; that is, the state of the husband's mind toward his wife in consequence of defendant's conduct, and the way in which such conduct, caused him to treat his wife.   When the doing of an act by a person may be proven, the declarations of such person accompanying the act and having reference thereto are admissible in evidence as explanatory thereof. The principle was tersely stated in *Sessions v. Little,* 9 N. H. 271, by Parker, C. J.: " When evidence of an act done by a party is admissible, his declarations, made at the time, having a tendency to elucidate or give character to the act, and which may derive a degree of credit from the act itself, are also admissible, as part of the *res gestæ.*  See, also, *Rawson v. Haigh,* 2 Bing. 99, 103.     Sexton v. Sexton, *supra,* is directly in point.   There the son's statement to his wife that his father wanted the son to leave her and stay with him, and on another occasion that his father wanted a divorce for him, was held to have been properly received in evidence in connection with proof of the transactions in which made.   In *Baker v. Baker,* 16 Abb. N. C. (N. Y.) 293, 302, the testimony of the wife that her husband in leaving had said that his father had come down and persuaded him to leave her was held to be admissible as tending to explain the act of leaving.  *Williams v. Williams,* 20 Colo. Sup. 51 (37 Pac. 614), is directly in point.   See, also, *Edgell v. Francis,* 66 Mich, 303 (33 N. W. 501); *Nevins v. Nevins,* 68 Kan. (75 Pac. 492); *Rudd v. Rounds,* 64 Vt. 432 (25 Atl. 410, 439).

The consideration of such evidence should be strictly

limited by the instructions to the determination of the state of affection between husband and wife, and of the effect of the influence on the mind of the spouse, whose affections are said to have been alienated, and the jury especially cautioned not to consider it in deciding whether any such influence was in fact exerted. The authorities relied on by appellant are not in conflict with what we have said. In *Fratini v. Caslini*, 66 Vt. 273 (29 Atl. 252, 44 Am. St. Rep. 843), the court merely held that declarations by the wife concerning her troubles with her husband subsequent thereto were not admissible, though those made during the time may be received as tending to show their mutual demeanor, and whether they were living on good or bad terms, and it was appropriately added that even then it should be made to appear in an action of crim. con. that the declarations were made or letters written " prior to the existence of any facts calculated to excite suspicion of misconduct on her part, and when there existed no ground to suspect collusion. In *Westlake v. Westlake*, 34 Ohio St. 621 (32 Am. Rep. 397), the declaration held to have been improperly admitted was the naked statement to a third party that defendant was doing all he could to separate her from her husband. It was in no way connected with anything indicating his mental attitude, and was clearly hearsay. In *Sanborn v. Gale*, 162 Mass. 412 (38 N. E. 710, 26 L. R. A. 864), the confession of the wife of her adultery twelve years previous was held to be inadmissible, and, of course, properly so, as in no way explanatory of any transaction between her and her husband. Such declarations to be received should be a part of the *res gestæ* in the sense that they must be so connected with some transaction between the husband and wife as in connection therewith, it may be said that they are explanatory thereof, or indicate in some way, the operating motive or cause of the acts described. But a mere subsequent account to a third person in the absence of the other party to the suit, is, as declared by the authorities re-

ferred to, the merest hearsay.   The ruling by which the evidence was received is approved.

III. The plaintiff was permitted, over objection to state that she was in good health when married, and that it had broken down when she refused longer to do the work for her husband's brother.   This was admissible, as tending to show that her refusal, over which the trouble began between plaintiff and defendant, was justifiable, and that any interference with her relations with her husband was without good cause.   On the same ground defendant's treatment of her thereafter was rightly received as tending to show a motive for interfering between her and her husband and the relations of the parties.   The same is to be said of the evidence concerning the temporary leaving defendant's home, and that he caused to be served notice to quit, upon her and husband while living in the same house.

2. SAME.

Evidence that plaintiff suffered from asthma after her husband left her, and that she was taken care of by the neighbors, was admissible, as tending to show her need of her husband's care, and the loss she had suffered.

3. SAME.

After eliciting on cross-examination of plaintiff that she had instituted a suit for breach of promise before her marriage, and had talked with her husband about the suit after and possibly before marriage, and after her answer to an inquiry as to whether they had talked about any other particular thing in her history that they had talked about everything, she was then asked to "state some other thing that you talked about after you were married; that happened to you while you were single." An objection as incompetent, irrelevant, and immaterial and not cross-examination was sustained, and properly so.   The question was entirely too general, and within it might have been included an indefinite number of answers having no bearing on the case.   Even if the rulings on this and sim-

4. SAME.

ilar objections were erroneous they were entirely without prejudice, for the matters sought were subsequently elicited by more specific inquiries. As directly in point, see *Bailey v. Bailey,* 94 Iowa, 598.

It was made to appear that plaintiff's husband instituted an action for divorce, and that it was subsequently dismissed. This evidence was admissible, for that, from statements by defendant, it might be inferred that he had participated in the matter both of bringing the suit and in its dismissal.

5. SAME.

IV. In the eighth instruction the jury was advised that if with improper motive " you find that defendant has prevented said husband from returning to his said wife, or if the defendant interfered to prevent a reconciliation between husband and wife, if you find that a reconciliation could have been had, then the defendant will be liable for such acts." This was erroneous for two reasons: (1) There was no allegation in the petition that defendant had prevented plaintiff's husband from returning to her after he had abandoned her; and (2) there was no evidence to sustain either charge. The tenth instruction is vulnerable to the same objection. The seventh instruction when considered in connection with the sixth correctly states the law. *Rath v. Rath* (Neb.), 89 N. W. 615; *Nevins v. Nevins,* 68 Kan. 410 (75 Pac. 492). It would have been preferable to have included both in a single paragraph.

6. INSTRUCTIONS.

In the fourteenth instruction, after saying that if George surrendered the lease to the farm in 1904, the defendant had the right to serve a notice to quit on plaintiff, and committed no wrong in so doing, the court added: " Unless you find from the evidence that said lease was canceled for the express purpose of enabling defendant to serve said notice to quit and to get rid of plaintiff from said premises." Even if all this were true, the defendant might have not been in the wrong. There should

7. SAME.

have been included the thought of his implication in bringing about the result.

The following instruction was given: " You are instructed that evidence has been offered by defendant in regard to the moral character of the plaintiff. This has been ad-

8. INSTRUCTION: mitted for the purpose of testing her credibility
bad moral
character.  as a witness, and for no other purpose, and you are instructed that it cannot be used on the question of the mitigation of damages. The law permits this kind of evidence to be given for the purpose of testing the credibility of a witness, but such reputation should be confined as nearly as possible to the time when said witness testified, as the law presumes that although a witness' reputation for moral character may not be good a long time ago, yet that they are reforming and it may be good at or about the time they testify, and the nearer the time such testimony is given touching said character, the greater weight it has."

This is erroneous in three respects, namely: (1) In limiting the testimony of plaintiff's moral character to testing her credibility as a witness; (2) in saying that the law presumes a witness of bad moral character is reforming; and (3) in declaring that the nearer the time such testimony is given touching such character the greater weight it has. In such a case the plaintiff's character is in issue. *Bailey v. Bailey,* 94 Iowa, 605. Moreover bad character was especially pleaded in mitigation of damages, and as bearing on the issue thus raised the evidence of plaintiff's moral character might be considered. See section 3593, Code. The law indulges in no presumptions concerning the moral character of a witness save that implied, in the rule that until assailed evidence is not ordinarily admissible for its support. Whether the character or reputation of a witness has deteriorated or improved is not a matter of presumption, but of proof, and, in any event, is material only as bearing upon the inquiry concerning what was the character or reputation of the individual at the particular time in question.

By " nearer the time such testimony is given touching said character, the greater weight it has " was doubtless meant that testimony of recent reputation is entitled to greater weight than that of a more remote period.    Ordinarily this is true and furnishes the reason for rejecting testimony of the reputation of a person at-a period long previous to the trial.    But when evidence is received, some relating to the reputation at one period and some at another, the weight to be given the evidence as to either necessarily depends upon the credibility and knowledge of the witnesses, and other circumstances, and is for the determination of the jury.    See *McGuire v. Kenefick*, 111 Iowa, 147.

V.    With respect to what plaintiff had testified her husband had said to her concerning the defendant's advice and wishes in relation to their separation the court said : " This

9. EVIDENCE OF DEFENDANT'S STATEMENTS: relevancy: instruction.

was permitted for the purpose of showing the husband's reasons for leaving the plaintiff, but not for the purpose of proving these facts against the defendant, and you must not consider such evidence as any admission by the defendant, or as at all binding upon him."    Possibly this instruction was without prejudice, for, after stating the reasons for receiving the evidence, the jury was told it could not be considered for the purpose of proving the facts against defendant.    What then could have been the object in introducing it ?    The evidence was admissible, as tending to show the state of the husband's feelings toward plaintiff, and the influence, if any, which was breaking down and alienating his affections from her. The jury should have been advised that the evidence should not be considered in determining whether any such influence was in fact exerted by defendant, or that he ever said the things imputed to him.    Because of the errors pointed out, the judgment must be, and is *reversed*.

SHERWIN, J.— (concurring).    The case should be reversed for the reasons stated in the opinion, and, in my judgment, for the additional reason that the conversation between

the husband and wife treated in the second division of the opinion was inadmissible, and very prejudicial. His statement was not explanatory of a hostile act on his part, and should not have been admitted.

WEAVER, J.— I concur with the opinion expressed by SHERWIN, J.