WHITE, Respondent, vs. WHITE and others, imp., Appellants.

*October 9—October 26, 1909.*

*Husband and wife: Alienation of affections: Parties: Evidence: Declarations of husband: Appeal: Harmless error: Punitory damages: Excessive damages.*

1. In an action by a wife for alienation of her husband's affections the husband is not a proper party defendant, since he was not a joint tortfeasor with those who wrongfully brought about his state of mind, and cannot be held to have joined or confederated with the active parties in the wrong constituting the cause of action.

2. In such action the plaintiff may testify to declarations by her husband as to offers made to him by defendants to induce him to abandon her.

3. The erroneous admission of evidence is not prejudicial to appellants when it supports their claim and impeaches the case of the respondent.

4. In determining whether parents maliciously conspired to alienate their son's affections from his wife, the evidence should be considered in view of the rights of the parents and their obligations respecting their child's welfare and happiness.

5. In an action by a wife for a malicious conspiracy to alienate the affections of her husband, punitory damages may be awarded, even though one defendant is without property and the other is wealthy.

6. In an action by a wife for alienation of her husband's affections an award of $5,000 compensatory damages and $1,500 punitory damages is *held* not excessive.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed as to one defendant; affirmed as to the others.*

This is an action by the plaintiff, who is the wife of *Frederick H. White, Jr.,* for the alleged cause of action that the defendants maliciously, wrongfully, and wickedly confederated, conspired, and agreed to alienate and destroy the love and affection of *Frederick H. White, Jr.,* for plaintiff as his wife, and to induce him to desert her, and to prevent him from providing her the necessaries of life and of discharging toward her the duties of a husband. It is alleged that the defendants, to accomplish the objects of the malicious, wrongful, and wicked conspiracy and agreement, urged and persuaded *Frederick H. White, Jr.,* to desert and leave the plaintiff and to go and remain beyond the borders of the state, wherein plaintiff and her husband had resided as husband and wife up to the time he deserted her in July, 1905, and for this wrongful purpose the conspirators offered him sums of money and to pay him a fixed sum of money annually to so desert the plaintiff. It is also claimed that the defendants influenced him to wrongfully leave her by threatening that, if

he did not comply with such wrongful object, he would be dis-
inherited and barred from securing any portion of his par-
ents' estates. It is also alleged that *Frederick H. White, Jr.,*
was induced to act upon such wrongful importunities, and
that he became imbued with hatred and ill will toward plaint-
iff, which alienated and destroyed his affection for her, to her
great injury and damage.

It appears that *Frederick H. White, Jr.,* is the husband of
the plaintiff and that they were married December 11, 1901.
The defendants *Frances L.* and Frederick H. White, Sr., are
his parents. At the time of the marriage the plaintiff was
twenty years of age and her husband was twenty-one. He was
then attending a medical school and she a business college in
Milwaukee. They had become acquainted about a year before
their marriage, and for the two months preceding their mar-
riage they had met daily on their car trips to and from Mil-
waukee and Waukesha. They were married without their
parents' knowledge. The parents were informed of the mar-
riage by telegram from the husband, and they returned to
Waukesha, but did not immediately live in his parents' home,
for the alleged reason that his parents were cool and indif-
ferent toward plaintiff and her husband. A week thereafter
plaintiff and her husband made their residence with his
parents at Waukesha. His parents soon thereafter gave a
reception to present plaintiff and her husband to the friends
of the family. Plaintiff and her husband continued to reside
with his parents at Waukesha until the summer of 1903. At
different times during this period, while so residing together
at the White home in Waukesha, disagreements and quar-
rels arose between plaintiff and her mother-in-law, *Frances
L. White.* Her mother-in-law spoke of the plaintiff in a
derogatory way, deprecated her marriage to her son, and
characterized her as unfit to be his wife. In the summer of
1903 plaintiff and her husband moved to Milwaukee, where
his parents assisted them to secure and furnish a dwelling,

which plaintiff and her husband occupied until the late autumn of 1904, when they broke up housekeeping and took up their residence with plaintiff's sister, Mrs. Barnum, at Waukesha, Wisconsin, where they continued to reside as husband and wife until July 10, 1905, when he left and refused longer to live with and provide for her, as he has ever since refused to do. The plaintiff avers that this desertion was the culmination of the malicious conspiracy of his parents and *Mary A. Stewart* to which her husband finally became a party. The husband asserts that he left her and refused further to live with and support her as his wife because of her ill treatment of him, due to her ungovernable disposition, which resulted in personal violence to him and a failure to do her duty as his wife.

It appears that *Mary A. Stewart* had lived with Mr. and *Mrs. White, Sr.*, for many years; that she was retained by them in their family; that she assisted in raising *Frederick* and the other children; that she was of aid and assistance in various ways to *Mrs. White* personally and also in the household affairs, and that she was actively interested in furthering *Frances L. White's* wishes and desires respecting plaintiff and her husband's marital relations and affairs. *Frances L. White*, her children, and *Mary A. Stewart* went to San Antonio, Texas, for the winter of 1904–05. They wrote letters from there to *Frederick H. White, Jr.*, in November and December, referring to plaintiff in terms of reproach, reflecting on her as unworthy of his care, attention, and society and as unfit to be his wife, and suggesting pecuniary inducements if he should rid himself of her and seek release from his marriage obligations. After the receipt of these letters he visited the family in Texas. The evidence tends to show that his mother and *Mary A. Stewart* then tried to induce him to leave plaintiff, return to his medical studies at his mother's cost, and that upon his declination to comply with their solicitations he was informed by them that his parents refused to

longer give him assistance and financial aid.    In the following July he left the plaintiff and refused to reside with her as his wife or to maintain a home for her support.    Since then he has resided with his parents and has attended medical college as his mother had proposed and urged him to do before he left the plaintiff.

Upon these facts and other evidential facts corroborative thereof the court found that no cause of action was shown against Frederick H. White, Sr., and Harry W. Wood and dismissed the action as to them.    The court also found that the defendants *Frances L. White* and *Mary A. Stewart* contrived, conspired, and associated together for the purpose of preventing plaintiff from performing her marital duties toward her husband and from enjoying and receiving her husband's society and support; that they thus wrongfully and maliciously intermeddled in the marital relations of plaintiff and her husband, and maliciously urged, persuaded, and induced him to desert and abandon her that they might thereby accomplish their wrongful purpose of destroying his love and affection for her and of inducing him forever to desert her as his wife; and that they thereby had deprived her of his society and aid and comfort as a husband.    The court awarded plaintiff $5,000 as compensation and $1,500 as punitory damages in the action, with costs.    The court also found that the plaintiff's husband had joined his mother and *Mary A. Stewart* in the malicious and wrongful conspiracy and awarded judgment accordingly.    This is an appeal from such judgment.

For the appellants there was a brief by *Ryan, Merton & Newbury,* and oral argument by *T. E. Ryan* and *M. A. Jacobson.*

For the respondent there was a brief by *Clasen & Walsh,* attorneys, and *Tullar & Lockney,* of counsel, and oral argument by *D. S. Tullar* and *E. D. Walsh.*

Siebecker, J.    The defendants contend that the court erroneously held that plaintiff's husband was a proper party

defendant and a party to the conspiracy for the alienation and loss of his affection and society. Sec. 2345, Stats. (1898), as amended by ch. 17, Laws of 1905, provides that: "She [a wife] may also bring and maintain an action in her own name, and for her own benefit, for the alienation and the loss of the affection and society of her husband." This statute, which confers rights on a married woman to maintain an action in her own name as to her separate property, business, personal earnings, or for any injury to her person or character as if she were sole, had been construed before the amendment to confer on her the right to maintain an action against her husband for violation of those rights, as she had a right against strangers. *Carney v. Gleissner,* 62 Wis. 493, 22 N. W. 735; *Brader v. Brader,* 110 Wis. 423, 426, 85 N. W. 681.

The question here is: Is the husband a joint tortfeasor in the commission of the wrong constituting the plaintiff's cause of action? True, he was guilty of the wrong of leaving the plaintiff in consequence of the wrongful conspiracy and of causing her the loss of his affection and society. This, however, is the result of the tort alleged to have been committed by the other defendants, namely, their malicious purpose of the wilful and intentional alienation of him from her and the causing the loss of his affection and society. The gist of the action is the damage resulting to the plaintiff by the wrongful conduct of those who induced the alienation and the loss of her husband's affection and society. This is attributable to the acts and conduct of the persons who influenced the husband to yield to their wrongful purpose. Their acts in furtherance of this purpose constitute the tort for which the resultant damages are recoverable. It cannot be said that the husband was an active participant in carrying out the objects of the wrongful conspiracy to accomplish the alienation and the loss of the husband's affection for his wife and the consequent loss of his society by her. The wrongdoers acted upon and through him to accomplish their illegal purpose against the plaintiff, and the cause of action was complete when their

machinations had operated to cause plaintiff the alienation and the loss of affection and society of her husband. He is not, therefore, a joint tortfeasor with those who wrongfully brought about this state of mind, and hence he cannot be held to have joined or confederated with the other active parties in the wrong constituting the wife's cause of action. In so far as his conduct may be violative of any marital rights of the wife, he is personally responsible to her independently of the defendants' wrong through which he was led to breach his legal obligations, and the wife may seek her redress in an appropriate action against him. From these considerations it follows that he was not a party to the tort and hence not a proper party defendant.

It is suggested that this court passed on this question on the former appeal of the case (132 Wis. 121, 111 N. W. 1116) and held that the husband was a proper party defendant. This question was not presented on that appeal and is not embraced in the decision. The complaint, considered on that appeal upon general demurrer, also contains allegations to the effect that *Frederick H. White, Jr.,* and the other defendants, after his separation from the plaintiff, had maliciously conspired to entice and induce her into unchaste and criminal acts to degrade and injure her for the purpose of enabling her husband to legally separate from her. No proof was offered to sustain this allegation and it is therefore dropped from the consideration of the case on this appeal.

The court permitted plaintiff to testify to declarations made by her husband to her and others, which purport to give the offers and inducements held out to him by his parents to induce him to separate from and abandon the plaintiff. It is claimed that this was prejudicial error. This class of evidence has been held proper and competent as showing the influences producing the alienation and the loss of affection complained of and the cause of separation and the destruction of the marital relation. *Hardwick v. Hardwick,* 130 Iowa, 230, 106 N. W. 639; *Williams v. Williams,* 20 Colo. 51, 37

Pac. 614; *Nevins v. Nevins,* 68 Kan. 410, 75 Pac. 492. To the same effect is the case of *Horner v. Yance,* 93 Wis. 352, 67 N. W. 720.

It is contended that the court committed prejudicial error in receiving and considering the testimony of plaintiff's husband. An examination of his evidence shows that, though it was erroneously admitted, it could not have operated to the defendants' prejudice, since all of the material facts to which he testified supported the defendants' claims in the case and impeached plaintiff's case. Under this state of his evidence no prejudicial error resulted from its admission.

The defendants assert that the evidence does not support the court's findings to the effect that the defendants *Frances L. White* and *Mary A. Stewart* maliciously confederated together to injure the plaintiff through the alienation and the loss of affection and the society of her husband, and that their acts and conduct caused such alienation and loss of affection and society as resulted in an abandonment and separation from her. The proof relevant and material to these findings of the court embraces nearly all of the facts and circumstances disclosed by the evidence. The evidence is in positive and direct conflict on this issue. The inferences from the evidence depend, however, upon the weight and the credibility of the different witnesses testifying in the case considered in connection with the positive testimony contained in the letters and other evidence in the case. In determining whether the defendants did maliciously conspire to accomplish the alienation of the husband and the loss of his affection and society by the wife, the evidence should be considered in view of the rights of the parents and their obligations respecting their child's welfare and happiness. As stated in the recent case of *Jones v. Monson,* 137 Wis. 478, 487, 119 N. W. 183:

"The true test to be applied to the evidence in this class of cases is: Were the defendants in what they did actuated with reasonable parental regard for their child, or were they actu-

ated by unreasonable ill will towards the husband or wife, as the case may be ?"

"Acts done by a stranger might well be regarded as malicious, while similar acts by the parents would not give rise to a well-grounded suspicion of bad intention."

It is strenuously urged that the evidence in this case fails to show that the defendants *Frances L. White* and *Mary A. Stewart* maliciously confederated together for the unlawful purpose charged, and that there is nothing to show that they attempted to carry out such purpose. As stated, the voluminous evidence on this issue embraces well nigh all the material facts and circumstances in the case and cannot profitably be restated here. The record contains positive evidence supporting the claim that these defendants combined and took actual steps to poison the mind of the plaintiff's husband against her and to induce him to separate from her as his wife. The circumstances of their conduct in the matter are cogent in support of this claim. True, much of the direct evidence of the defendants is a denial of any such purpose and an endeavor to explain the circumstances tending to show guilt. The court's conclusions, however, are clearly supported by the facts and circumstances shown, if the witnesses testifying thereto are worthy of credit and belief. The conclusions of the court as to the facts must stand unless we can say from the record before us that the evidence of the witnesses in support thereof is incredible or not of sufficient weight to warrant the court in finding these defendants guilty of the wrong alleged against them. After an attentive reading and consideration of the evidence, we cannot say that the witnesses testifying in support of the cause of action were not entitled to credit and that such evidence was insufficient in weight to sustain the findings. Upon the record it must be held that these defendants were guilty of maliciously confederating together to injure the plaintiff by effecting the alienation and the loss of affection and society of her husband.

It is asserted that the award of punitory damages is illegal because they are evidently allowed and fixed at the sum awarded upon the evidence of the wealth of the defendant *Frances L. White.* There is nothing in the case showing that the trial court awarded the punitory damages upon this ground. The claim that punitory damages are not proper in view of the fact that one of the defendants is without property and that another defendant is possessed of considerable means is not well founded. The cause of action arises out of the malicious conduct of the parties, and the wrongdoers can be subjected to punishment by the award of punitory damages therefor. We cannot say as matter of law that the trial court allowed an excessive amount of either compensatory or exemplary damages under the facts and circumstances of the case. The record presents no grounds for disturbing the judgment.

*By the Court.*—The judgment is reversed as to the defendant *Frederick H. White, Jr.,* and the cause remanded with directions to dismiss the action as to him. The judgment is affirmed in all respects as to the other defendants.