GUSSIE E. STOCKER, APPELLEE, V. HARRIET STOCKER, APPELLANT.

FILED JULY 31, 1924. No. 23549.

1. **Witnesses:** HUSBAND AND WIFE. PRIVILEGED COMMUNICATIONS. That part of section 8835, Comp. St. 1922, which makes husband and wife incompetent to testify "concerning any communication made by one to the other during the marriage," and section 8838, Comp. St. 1922, which provides that "neither husband nor wife

can be examined in any case as to any communication made by the one to the other while married," were enacted for the purpose of affording protection to the marital relation, to foster mutual confidence between husband and wife, and to prevent the disclosure of any confidential communication from one to the other.

2. Damages: PRESUMPTION. In an action for the recovery of damages, the presumption obtains, in the absence of a contrary showing, that the jury did not consider any element of damages that was unsupported by evidence.

3. Appeal: AFFIRMANCE. The giving of an erroneous instruction is not ground for reversal, unless it fairly appears that it probably prejudicially affected the substantial rights of the complaining party.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. Affirmed.

C. C. Flansburg, for appellant.

Paul Jessen, G. E. Hager, and Kelligar & Ferneau, contra.

Heard before MORISSEY, C. J., ROSE, DAY and GOOD, JJ., BLACKLEDGE and REDICK, District Judges.

GOOD, J.

In an action for alienating her husband's affections, plaintiff, Gussie E. Stocker, recovered a judgment against her mother-in-law, Harriet Stocker, for $10,000. Defendant appeals.

Plaintiff and Reggie Stocker were married at Auburn, Nebraska, in June, 1916, and immediately went to the home of Reggie's parents in Lincoln, Nebraska, and made that their home until the young people separated in July, 1921. At that time plaintiff left the home of her husband and parents-in-law, and went to the home of her parents in Auburn, where she has since resided, apart from her husband. In October, 1921, Reggie Stocker sued his wife for a divorce. A trial of that case resulted in a decree giving his wife an allowance for separate maintenance and the custody of their little daughter, which decree was afterwards affirmed by this court, Stocker v. Stocker, ante, p. 201. Defendant

contends that the verdict is not supported by the evidence; that the proof shows that plaintiff did not lose the affections of her husband until after the separation in July, 1921, and that there is no evidence to show any act on the part of defendant, after that separation, which would cause the loss of affections complained of.

There is evidence tending to establish the following state of facts: Defendant was not pleased with her son's choice of a wife. Shortly after marriage she began to ill-treat the plaintiff; would not allow plaintiff's parents to visit her in the home; would not allow plaintiff to partake of delicacies and other articles of food that would be placed upon the family table; made it so unpleasant that plaintiff's friends would not call at the home; required plaintiff to retire to her room upstairs early after the evening meal; and would not allow her to have a light in her room except long enough to disrobe in retiring; frequently said the plaintiff was untruthful, dirty and dishonest; frequently called her a liar and a thief and other words not fit for the printed page, and on more than one occasion physically assaulted the plaintiff and falsely accused plaintiff of assaulting and wounding defendant. These things were done in the presence of plaintiff's husband and some of them in the presence of neighbors. Defendant told plaintiff she was not wanted in the home and to leave and not return, and subjected her to such indignities that no woman of spirit and self-respect could or would endure the treatment. As time went on, the conditions became worse and less endurable. On the morning that plaintiff left she was told by defendant's husband not to return; that Reggie would pack and send her things to her. When married, plaintiff weighed 115 pounds and at the time of the separation weighed but 94 pounds. Because of the constant harassment to which she was subjected, the plaintiff became nervous and ill, her peace of mind was destroyed and her health was well-nigh ruined. She frequently besought and begged her husband to provide a home apart from that of his parents, no matter how humble. Her husband at all

times refused to provide a separate home for his child and her. At first he would refuse to partake of such articles of food as were denied his wife; ere long he changed and ate food his wife was denied, saying that there was no use in denying himself simply because she was denied. On one occasion, at night, Reggie came from his mother's room to his wife and told her they would never have a separate home; that if he should leave the parental roof his mother would commit suicide and bring shame and disgrace he could not bear, and that she would disinherit him if he were to leave.

After the separation in July plaintiff was at the home of her parents in Auburn, but 90 miles distant from Lincoln. Her husband did not visit her and his little daughter for two months, and the occasion of that visit was the transaction of business for his parents at Auburn, and then he called upon his wife. It is true that in the interim several letters passed between plaintiff and her husband, but it is significant that he kept carbon copies of all the letters he wrote at that time, as well as of previous letters. He again visited his wife in October and, when she was unwilling to return to the home of his parents and submit to the conditions above described, divorce was talked of, and he shortly afterwards began his action for divorce.

We think the evidence, fully and fairly considered, shows that Stocker's affection for his wife waned with the lapse of time, and, while he still professed an affection for her after the separation, that the jury were justified in the belief that he cared little for his wife, or he would not have insisted that she return to the home where she had been so cruelly mistreated. Had he then entertained for her the love, affection and consideration that a husband should entertain for his wife, he would have shielded her from the indignities to which she was subjected at his parents' home, and would have provided a home elsewhere. We find nothing in the record that would justify an inference that plaintiff's loss of her husband's affection was caused by anything other than the conduct of defendant. We are satisfied that the evidence amply sustains the verdict.

During the progress of the trial plaintiff was permitted, over objection, to testify to communications between her and her husband where such communications were not in the presence of defendant. It is urged that the error was committed in the admission of such evidence, on the ground that it was hearsay and incompetent, and because under the statute a wife is incompetent as a witness to testify as to communications between her and her spouse that were made during the existence of the marriage relation.

While evidence of what the husband said out of the presence of the defendant would ordinarily be hearsay and incompetent to prove such wrongful conduct of defendant as would tend to cause the husband to lose his affection for his wife, such evidence may be properly received to show the state of the husband's feelings toward his wife, and in this case the court, by proper instruction, informed the jury that such evidence was received only for that purpose. That such evidence is admissible to prove the state of the husband's feeling has been held by this court and is sustained, we think, by the weight of authority. *Hope v. Twarling*, 111 Neb. 793; *Melcher v. Melcher*, 102 Neb. 790; *White v. White*, 140 Wis. 538; *Hardwick v. Hardwick*, 130 Ia. 230.

It is strenuously urged that the provisions of sections 8835, 8838, Comp. St. 1922, make the wife incompetent to testify concerning any communication made to her by her husband during the marriage, and that error was committed in receiving such evidence. Section 8835, *supra*, so far as applicable, provides: "The following persons shall be incompetent to testify:  *  *  *  Third. Husband and wife, concerning any communication made by one to the other during the marriage, whether called as a witness while that relation subsists or afterward." And section 8838, *supra*, provides: "Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal, in testimony, any such communication made while the marriage subsisted."

Stocker v. Stocker.

To determine whether error was committed, it is proper to consider the purpose for which these statutes were enacted, and whether the communications that were received[*] in evidence violate the spirit and purpose of the statute. It is not sufficient to exclude such evidence that it falls within the letter of the statute, unless it is also within its spirit and purpose. The statute is founded on wise public policy of affording protection to the marital relation. The happiness of the parties to the marriage contract requires unlimited confidence between husband and wife, and this the statute undertakes to secure by providing that such confidence shall be inviolable, and that in no way shall either spouse be compelled to disclose a confidential communication of the other. It was the mutual and confidential communications that were intended to be protected. To hold to the strict letter of the law and exclude every communication between husband and wife would be to destroy the beneficent purpose of the statute. It was not intended to shield the wrongdoer, who by his own misconduct sought to destroy the marital relation existing between others, by protecting him from the effect that such communications might have, if given in evidence. The statute was not enacted to protect the destroyer of the marital relation, and such would be the effect of it, were we to apply the statute literally.

This subject has received the consideration of numerous law writers. Wigmore, in his work on Evidence (2d ed.) vol. 1, sec. 2336, says: "The essence of the privilege is to protect confidences only." And, as observed by Bishop, J., in the case of *Sexton v. Sexton*, 129 Ia. 487, 2 L. R. A. n. s. 708: "This must be true, because there can be no reason arising out of public policy, or otherwise, requiring that every word spoken between husband and wife shall be privileged, irrespective of the presence in which spoken or the subject or occasion thereof. And, within our observation, no court has ever gone so far as to so hold. The spirit of the rule as enforced at common law, and, within our understanding, the meaning to be gathered from the statute, is

that the privilege shall be construed to embrace only the knowledge which the husband or wife obtains from the other, which, but for the marital relation and the confidence growing out of it, would not have been communicated, or which is of such a nature or character as that, to repeat the same, would tend to unduly embarrass or disturb the parties in their marital relations. It is the marital communication, then, that is sought to be protected, and this is so because there can be no purpose of public policy to interfere, except to guard and foster the marital relation. Any other construction would be intolerable, and would lead to most absurd results." Other authorities bearing on and tending to support the same view are: *Lloyd v. Royal Union Mut. Life Ins. Co.*, 245 Fed. 162; *New York Life Ins. Co. v. Mason*, 272 Fed. 28; *In re Estate of Van Alstine*, 26 Utah, 193.

After a careful examination of the evidence to which objection is made, we are constrained to hold that no communication which could be said to be confidential in its nature, or which would embarrass or disturb the marital relation between plaintiff and her husband, was revealed.

Defendant complains of instruction No. 15, relative to the measure of damages, which told the jury that if they found for plaintiff they should consider "her loss of support, if any she has suffered. You should not make any award for support in so far as the same has been provided for and paid in the divorce action and in so far as it will be furnished her in the future under court order in such divorce case, or otherwise outside of this lawsuit." It is argued that the instruction is erroneous because plaintiff's support had been fully provided for in the divorce action, and also because there was no evidence of the value of her support. Defendant cites us to an instruction given in the case of *Scott v. O'Brien*, 129 Ky. 1, as stating the correct rule. In that instruction the jury were directed to award plaintiff "such damages as you believe will fairly compensate her * * * and for the loss of her husband's support, if there was such loss, except to the extent that he

has contributed, or may by law be compelled to contribute to her support."

We are unable to perceive any substantial difference between the two instructions. However, under the facts disclosed in the instant case, we question the propriety of the instruction given. Since plaintiff's support had been judicially admeasured in the divorce action and the order of the court had been complied with, we think that loss of support was not a proper element of damage to submit to the jury. It does not necessarily follow, however, that the instruction was prejudicially erroneous. The evidence discloses the amount awarded to plaintiff in the divorce action, and that all payments which were then due had been paid, and it further discloses that a part of plaintiff's support had, since her marriage, been furnished by her parents, particularly her clothing, and the jury were directed to exclude these items. There is no evidence as to the value of the support that plaintiff was entitled to receive from her husband and no evidence to indicate that the amount awarded in the divorce action and that furnished by her parents were not ample. These items were particularly excluded from the consideration of the jury. They were further directed in another instruction that plaintiff assumed the burden of proving her cause of action by the preponderance of the evidence. In the absence of any showing to the contrary, the presumption obtains that the jury did not consider any element of damages that was unsupported by evidence. Aside from the amount of the verdict, there is nothing to indicate that the instruction was prejudicial to defendant. When it is considered that the plaintiff and her husband are comparatively young, that she had a prospect of many years of happy conjugal relationship with her husband and their child, that this happy outlook has been utterly destroyed, that her hopes and happiness have been blighted and thwarted by the wrongful act of defendant, we cannot say that defendant was in any way prejudiced. The giving of an erroneous instruction is not ground for reversal unless it appears that it probably preju-

·dicially affected the substantial rights of the complaining party. *Smith v. Roehrig*, 90 Neb. 262.

There are other assignments of error, relative to the giving and refusal of instructions and to rulings on admission and exclusion of evidence. They have all been examined, but we find no prejudicial error.

The judgment is

AFFIRMED.

Note.—See Appeal and Error, 4 C. J. p. 781, sec. 2732; p. 1029, sec. 3013—Witnesses, 40 Cyc. p. 2353.