### RICHARDS v. LORLEBERG. *

No. 6361.

United States Court of Appeals for the District of Columbia.

Argued April 5, 1935.

Decided Aug. 19, 1935.

* Writ of certiorari denied 56 S. Ct. 178, 80 L. Ed. ——.

William C. Sullivan and Andrew M. Hood, both of Washington, D. C., for appellant.

Jean M. Boardman of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment for the plaintiff in an action for damages for the alleged alienation of the affections of the plaintiff's husband.

The plaintiff, Nancye M. Lorleberg, in her declaration among other things alleged that on November 3, 1907, she was lawfully married to Richard Lorleberg and since that date has continued to be his lawful wife; that at all times prior to the wrongful acts of the defendant, plaintiff and her husband lived happily together; that defendant, wrongfully and maliciously intending to deprive plaintiff of the affections and consortium of her husband, on divers occasions between January 1, 1928, and December 9, 1932, did take undue interest in the personal and professional affairs of plaintiff's husband, and sought his society and companionship and enticed him from the society and companionship of the plaintiff, and entertained him in her home and elsewhere and bestowed upon him valuable gifts, and on December 3, 1932, and on the 7th, 8th, and 9th days of that month, at her home in the city of Washington did debauch and carnally know plaintiff's husband, and by such acts did alienate and destroy the affections of her husband toward plaintiff and caused them to become separated; and that by reason of defendant's wrongful acts the plaintiff's home was destroyed, and she suffered much distress of body and mind to her great injury, for which she prayed damages in the sum of $100,000.

The defendant for her plea among other things denied that she had contrived or intended to deprive defendant of the affections and consortium of her husband, or taken an undue interest in his personal and professional affairs, or sought his society and companionship, or enticed him from the society and companionship of the plaintiff, or entertained him in her home or elsewhere, or bestowed upon him valuable gifts in order to induce him to transfer his affections and society from the plaintiff to the defendant, or at any time or place did debauch and carnally know plaintiff's husband, or did cause the plaintiff and her husband to become separated whereby plaintiff was deprived of the affections and consortium of her husband.

The case was tried on evidence to the jury; a verdict for $30,000 was returned in favor of the plaintiff which, however, was reduced by remittitur to $18,000. Judgment was entered thereon against the defendant, and the present appeal was then taken.

■ It is contended on behalf of the appellant that at the close of the testimony the trial court should have directed a verdict for the defendant. We think, however, that the evidence introduced on behalf of the plaintiff required the court to submit the case to the jury, and moreover that the evidence furnishes a sufficient basis for the verdict returned by the jury.

The testimony tends to show that the plaintiff, who was 48 years of age at the time of the trial, was married to Richard Lorleberg in 1907. Lorleberg was a leading musician, giving lessons upon the cello and playing in orchestras and concerts. In past years he is said to have had an income of $5,000 to $10,000 per year. During their married life he was kind and affectionate to his wife and they lived happily together until in February, 1928, he started giving music lessons to the defendant, and defendant began to telephone to him daily for a period of several years. In the early part of 1929 Lorleberg bought an automobile and defendant furnished $150 for the first payment upon it, and then wrote a letter to the plaintiff in which she said she had given Lorleberg the money to make the initial payment on the car and that if plaintiff thought anything of herself she would not ride in a car that another woman had bought. In the spring or summer of 1930, while plaintiff and her husband were visiting in the home of Dr. and Mrs. Chandler, a discussion arose about the defendant, and Dr. Chandler expressed a desire to see her, whereupon Lorleberg telephoned to defendant, and he and Dr. Chandler went to her home and she came back with them. In August, 1930, the defendant invited Lorleberg and his wife to visit with her at her cottage at Rehobeth Beach, and plaintiff and her husband made such a visit in answer to the invitation. The defendant drove them to the beach in her car and upon the drive repeatedly patted Lorleberg on his face with her hand. In the conversation then occurring defendant remarked that her husband said she looked better without any clothes on and Lorleberg agreed. On the ferry they had breakfast and defendant gave Lorleberg her pocketbook out of which he paid the bill. Later the plaintiff asked for an explanation of this and Lorleberg said he was welcome to anything the defendant had. While at the beach the defendant told the plaintiff that her own husband had helped her select her cottage but that she wished he had fallen off the ferry and been drowned. On another occasion the defendant warned the plaintiff not to be too sure that no one could take her husband away from her. While at the beach the defendant appeared in the presence of Lorleberg every day clad in a silk dress with nothing under it and with no stockings, and at times sat in such a way as to display the private portions of her body. On one occasion while they were playing cards, the defendant put her foot in Lorleberg's lap under the card table. On the same occasion defendant asked the plaintiff why she didn't take a trip around the world. The plaintiff replied that her husband would not let her take such a trip alone, and Lorleberg told her to go ahead and see whether he would. The plaintiff then retired to her bedroom and cried. Lorleberg followed her and pushed her into a cupboard and closed the door so that the defendant could not hear her crying. The plaintiff told her husband that the defendant was in love with him and that she would remain no longer. Lorleberg said that he thought defendant was in love with him but that he was not interested. On the following day they left the beach. Thereafter the plaintiff sought to dissuade Lorleberg from continuing to give music lessons to defendant, but he insisted upon doing so, and the defendant continued to telephone him every morning.

After their return from Rehobeth, Lorleberg was very unkind to the plaintiff and told her that she could not appreciate his art like the defendant did, and they frequently had arguments during which he called her a damned bastard, a bitch, a devil, and a damned deaf thing no man could live with. In the fall of 1930 the defendant and Lorleberg attended a concert together and left together. On one occasion the defendant told Mrs. Alice Darton that she gave Lorleberg concert tickets because if she did not do so he could not go, and she also told her that Lorleberg was a great artist and it was a pity he did not have a fine environment and a wife who could entertain for him and give him a background; that if he had that he would be a great man. On or about the 1st of February, 1931, the plaintiff and her husband attended a ball. When they arrived Lorleberg said that the defendant wanted them to sit in her box, and when plaintiff refused to do so because she had not been invited Lorleberg threatened to go home and did leave the room. A friend brought him back and they sat in the defendant's box. About a week after this Lorleberg and plaintiff separated and she went out of town. Later plaintiff returned to Lorleberg upon his promise not to give the defendant any more lessons and not to go to her house. On May 15, 1931, the defendant told Mrs. Darton that Lorleberg came to her house every night for a drink after playing at the Shoreham. Afterwards Lorleberg was at the home of the defendant, and there in the presence of the defendant he told Mrs. Darton that he did not amount to anything in his home and that he was treated like a dog.

One of the plaintiff's witnesses testified that upon one occasion she was present when Lorleberg came home intoxicated and called his wife many vile names and said no one would want to be bothered with her. He told her the defendant said that his wife did not understand him as an artist like the defendant did, and that his wife was nothing but a slave driver and treated him like a dog.

Another witness testified that she heard many quarrels between plaintiff and her husband; that he used to tell plaintiff the things defendant said she should do. He said that any time plaintiff did not want him he could always get defendant; that defendant had offered to buy him a $135,-000 home; that at any time he wanted the defendant would buy this home; that he just had to say the word; that witness heard plaintiff's husband call her bad names on many occasions; heard him tell plaintiff that defendant was the only one who appreciated him and would do anything for him.

It was testified by another witness that plaintiff and her husband showed him a map of a ship sailing to Bermuda and plaintiff's husband said that defendant wanted to take him on the trip and that defendant drew on the map where her room would be and his room would be and that they were connecting rooms; that he alone was invited to make the trip; that plaintiff's husband said that the defendant said that plaintiff could not satisfy him sexually; that he had some one to take care of him and let him have a life of luxury and buy him a house; and that this some one was the defendant.

In May, 1931, plaintiff told her husband that the defendant was breaking up their home and that he would have to choose between them, and Lorleberg said he needed the money which the defendant gave him. On or about the 1st of September, 1931, the plaintiff went to the rear of defendant's home where a party was going on and there saw her husband and the defendant in the kitchen. A few days thereafter plaintiff and her husband had a fuss during which he called her many bad names. About two weeks afterwards plaintiff left Lorleberg and went to the home of her mother in Baltimore. The same night Lorleberg went to see her and she told him that he had broken his promise and that she would never live with him again. Several months later, however, she returned to live with him upon his promise never to see the defendant again. For about a year thereafter her husband treated her kindly, but in the month of November, 1932, his attitude changed. In the latter part of that month he told her that defendant appreciated his art, but that plaintiff could not understand him at all and that he would get the money to send her to Europe and that he would go to California; that she should get herself something to do; that on December 3, 1932, she saw her husband enter the back door of defendant's home. Following this she employed detectives to watch him. On the night of December 7, 1932, her husband left the Shoreham Hotel where he

had been playing, entered the automobile of the defendant which was waiting outside, and went to the home of defendant where he remained until after midnight. On the night of December 9, 1932, her husband left the hotel at about 9:15 and went to the home of the defendant. At about 11:25 the same night plaintiff, accompanied by her sister and several detectives, demanded admission to the defendant's home. After a delay of about 15 minutes they were admitted by the defendant, who denied that Lorleberg was there and gave the detectives permission to search the house. Lorleberg eventually was found hiding in the colored servant's room in the basement with his hat over his face. During this time the defendant's husband was absent from the city.

These circumstances, notwithstanding the denials or explanations of them by the defendant and her witnesses, presented a case entitled to go to the jury upon a claim that they tended to show a willful and aggressive course of conduct on the part of the appellant, calculated to alienate the affections of Lorleberg and to deprive plaintiff of his consortium; and his affections were in fact alienated by defendant, and that by reason thereof he conducted himself toward his wife in a brutal manner such as made impossible her further cohabitation with him.

In this court it is contended by appellant that the trial court erred in admitting in evidence the testimony of the plaintiff telling of certain statements made by her husband to her purporting to repeat statements made by defendant to him in the absence of the plaintiff. It is claimed by appellant that proof of the statements made by Lorleberg to his wife in the absence of the defendant was mere hearsay evidence and accordingly incompetent.

Counsel for the defendant objected to this testimony when tendered, claiming it to be incompetent, and addressed the court as follows: "Will Your Honor instruct the jury before these questions are answered that they are not to receive this testimony to establish the facts stated in these questions and answer but merely as evidence tending to indicate the frame or state of mind of the husband?"

To this question the court made the following answer: "I will say this to the jury, and I think it covers the point: Nothing which you may glean as evidence from these conversations should have any weight whatsoever in determining the question as to whether or not the defendant exercised any influence upon the plaintiff's husband to destroy his affection for his wife or to gain it for herself. In other words, you are not to charge her upon any of the issues which go toward pointing out her effort as alleged by the plaintiff to destroy the love and affection of the plaintiff's husband for the plaintiff, but you are only to consider the condition of his mind as to whether or not affection for his wife had been lost or destroyed. Incident to that, of course, it seems that you might consider whether or not those affections had been transferred elsewhere but not to charge her; so, I think, perhaps, for the present, following Mr. Sullivan's suggestion, I will ask you to consider this evidence upon the question of the plaintiff's husband's frame of mind toward his own wife, and if later I find that it should be further extended, I will advise you."

To these remarks counsel for the defendant answered: "I think that meets my present point at this time."

In the court's charge to the jury certain instructions requested by the defendant were granted and were read to the jury by the court as the law of the case. Among them was the following instruction: "Defendant's prayer No. 4 reads: 'The jury are instructed as a matter of law that the evidence which has been admitted before them as to what the plaintiff and her husband and others said between themselves out of the presence and hearing of the defendant, and also the evidence which has been admitted as to what one person told another out of the defendant's presence and hearing as to what the defendant had said or done, does not tend to prove that the defendant did say or do or tend to prove any liability on the part of the defendant, and all such evidence was admitted and can be considered by the jury only for the purpose of showing the effect on the mind of the plaintiff's husband of the defendant's conduct and not for the purpose of proving such conduct; and unless they first find that the defendant was in fact guilty of such conduct, they cannot consider such evidence for any purpose.' "

The court then continuing said: "Now, commenting a little further upon that, you will recall that during the progress of the trial a question arose as to the admissibility of certain evidence, that evidence be-

ing conversations between the plaintiff and her husband, which purported to show certain declarations of conduct on the part of the defendant, and, when the court finally decided that the evidence should go before the jury, you were then told that that evidence and these conversations were only for one purpose; not that they would in any way tend to prove the acts or conduct or words chargeable in the conversation to this defendant but that they were receivable and should be limited by the jury in their consideration of it for the purpose of knowing and understanding what was the attitude of mind of the plaintiff's husband at the time of the conversations. So, again, in addition to what has been said here in the defendant's prayer, I wish emphatically to say that such conversations must not be regarded for any purpose except that which had been specifically indicated; and I will have you understand that it refers to all these conversations not in the presence of the defendant."

In our opinion the lower court did not err in admitting the evidence in question for the purpose only of showing the disposition of Lorleberg toward his wife, as restricted by the language requested by the appellant herself. It is true that many conflicting decisions appear in the books upon this subject, but the greater weight of authority favors the view adopted by the lower court.

The opinions of this court have not been entirely harmonious upon this subject. In Dodge v. Rush, 28 App. D. C. 149, 157, 8 Ann. Cas. 671, an action for alienation of affections, we said: "There is a minor question on which error has been assigned, that, if undecided, may arise on another trial. Plaintiff, as a witness on her own behalf, was asked to state certain declarations made by her husband to her. It does not appear clearly what these were, as the witness was not permitted to answer. But, assuming that they had relation to the defendant, or her conduct, we are of opinion that the court was right in their exclusion."

On the other hand, in Trenerry v. Fravel, 56 App. D. C. 146, 10 F.(2d) 1011, in an action for alienation of a wife's affections, we said: "It is the general rule that such statements of the alienated spouse may be received in evidence to show the state of mind."

The view expressed by us in Trenerry v. Fravel, supra, is supported by the following opinions: Williams v. Williams, 20 Colo. 51, 37 P. 614; Rose v. Mitchell, 21 R. I. 270, 43 A. 67; Nevins v. Nevins, 68 Kan. 410, 75 P. 492; Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639; White v. White, 140 Wis. 538, 122 N. W. 1051, 133 Am. St. Rep. 1100; Hillers v. Taylor, 116 Md. 165, 81 A. 286; Moir v. Moir, 181 Iowa, 1005, 165 N. W. 221; Melcher v. Melcher, 102 Neb. 790, 169 N. W. 720, 4 A. L. R. 492; Adkins v. Brett, 184 Cal. 252, 193 P. 251; Pugsley v. Smyth, 98 Or. 448, 194 P. 686; Nelson v. Nelson (2 C. C. A.) 296 F. 369; Stocker v. Stocker, 112 Neb. 565, 199 N. W. 849, 36 A. L. R. 1063; Fox v. Fuchs, 241 Ill. App. 242; Sherry v. Moore, 258 Mass. 420, 155 N. E. 441; Harlow v. Harlow, 152 Va. 910, 143 S. E. 720; Jackson v. Jackson (Tex. Civ. App.) 35 S. W.(2d) 830; Noles v. Noles, 223 Ala. 554, 137 So. 19; see, also, 30 C. J. 1139, and citations.

In Nelson v. Nelson (C. C. A.) 296 F. 369, 376, supra, a case for damages for alienation of a husband's affections, the court said: "It is argued that error was committed in admitting in evidence the result of the conference between the defendant in error and her husband after the family conference in the barn. This was received without objection or exception. The court on two occasions stated that this would not be evidence that it in fact occurred, but the evidence was admitted to show the state of mind of the husband. The court so instructed the jury in the charge. We see no error in the admission of this testimony for the purposes to which it was limited."

In Stocker v. Stocker, 112 Neb. 565, 199 N. W. 849, 850, 36 A. L. R. 1063, supra, a similar case, the court said: "During the progress of the trial plaintiff was permitted, over objection, to testify to communications between her and her husband and where such communications were not in the presence of defendant. It is urged that the error was committed in the admission of such evidence, on the ground that it was hearsay and incompetent. * * * While evidence of what the husband said out of the presence of the defendant would ordinarily be hearsay and incompetent to prove such wrongful conduct of defendant as would tend to cause the husband to lose his affection for his

418

wife, such evidence may be properly received to show the state of the husband's feelings toward his wife, and in this case the court, by proper instruction, informed the jury that such evidence was received only for that purpose. That such evidence is admissible to prove the state of the husband's feeling has been held by this court and is sustained, we think, by the weight of authority."

In Hillers v. Taylor, 116 Md. 165, 81 A. 286, 287, supra, the court said: "The testimony was competent, under the well-defined exception to the rule against hearsay evidence, in suits like the present one to show the state of feelings existing between the husband and the wife."

In Harlow v. Harlow, 152 Va. 910, 143 S. E. 720, 728, supra, the court said: "There was objection to certain evidence offered by the plaintiff, especially with reference to declarations by the plaintiff's husband. These declarations were properly admissible, as they showed the state of mind of the husband toward his wife."

It is not to be denied that many respectable authorities support the opposite doctrine. The differences may result in part from a different state of facts in the respective cases.

■ The appellant also assigns as error the admission by the lower court of the testimony of the witness Darton to the effect that the defendant took the witness through defendant's home, and told the witness that she and her husband occupied separate bedrooms, he on one floor and she on the other. We are unable to see how any substantial injustice was done to the defendant by reason of this testimony.

Appellant also assigns as error certain rebuttal testimony given by Dr. Chandler. The testimony, however, was introduced solely for the impeachment of the witness Lorleberg and was so explained by the court. We think no error resulted from its admission.

■ Other alleged errors as assigned relate to the instruction of the court with respect to proof of adultery and with respect to the regularity of the proceedings when the verdict was received from the jury. We have examined these assignments, but do not find them sustained by the record. The appellant also contends that the verdict is excessive, giving evidence of passion and prejudice on the part of the jury. In view of the remittitur required by the court

reducing the verdict from $30,000 to $18,-000, we feel that this assignment should not be sustained.

The judgment of the lower court is affirmed, with costs.

Mr. Associate Justice HITZ sat with the court at the hearing of this appeal, but departed this life before it was decided.