BOYD, Respondent, v. STRICKLAND, Appellant.

(237 N. W. 729.)

(File No. 6750. Opinion filed July 20, 1931.)

*Bruell & Henderson,* of Redfield, for Appellant.

*T. H. Luby,* of Huron, for Respondent.

POLLEY, P. J.   In this action plaintiff is seeking to recover damages from defendant for alienating the affections of plaintiff's wife.   The complaint is voluminous, but the gist of the charge is contained in paragraphs 2, 3, and 4, which are as follows:

"The plaintiff further alleges that on or about the summer and fall of 1918, while this plaintiff was living and cohabiting with and supporting his said wife on his farm near Bonilla, Beadle County, South Dakota, the defendant well knowing that the said Luella Boyd was the lawful wife of this plaintiff did, wrongfully and intentionally, deprive this plaintiff of her comfort, aid and society, by alienating the affections of plaintiff's said wife and more particularly as follows in this complaint.

"The plaintiff further alleges that the defendant began a series of efforts to entice the plaintiff's wife as above stated, to leave said plaintiff; that he would constantly visit or come to the plaintiff's place while the plaintiff was absent and would talk to Luella Boyd and would entice her to talk to him; would constantly remain in her company; would take her out riding; would and did use all

persuasive powers that he possessed to entice this plaintiff's then wife to leave this plaintiff and the defendant caused her to become dissatisfied with the plaintiff.

"The plaintiff further alleges that the defendant conspired and maliciously figured to alienate the affections of the plaintiff's then wife; would come to visit the plaintiff's family and bring his wife, he being then a married man, and would use and did for the purpose of covering up his real motive take his wife to this plaintiff's place and while there would and did court the plaintiff's wife and continued those tactics until the wife of the defendant became disgusted with him and sued him for a divorce and eventually she obtained a divorce from the defendant."

From the year 1900 to 1918 plaintiff and defendant lived on farms in the vicinity of Bonilla, in Beadle County. Each had a family consisting of a wife and two children. The families were acquainted and were friendly, and sometimes neighbored back and forth. There is nothing in the record to show any particular trouble in either family until about 1918. In the spring of 1918 defendant and family moved into the town of Bonilla. Later on his wife went to Aberdeen, and in 1920 procured a divorce from defendant, but what her ground for divorce was does not appear.

In December, 1918, plaintiff had an auction sale and sold off the personal property on his farm. Defendant was there and helped with the sale. Plaintiff then moved into Bonilla, and shortly thereafter he and his wife took a trip down South. They returned, and from June to August, 1919, lived with the defendant's family. Shortly thereafter plaintiff's wife left him and went to Aberdeen. Plaintiff went up to see her and they took a trip down into Nebraska. When they returned plaintiff talked of buying a house in Huron, but his wife told him she was not going to live with him any longer and again went to Aberdeen. Plaintiff went up to see her. Some discussion in regard to defendant took place and plaintiff told her that if she was going to go with Strickland she could not go with him (plaintiff) any more. She told him to just watch her smoke. The Strickland family moved to Aberdeen during the latter part of 1919. About this time plaintiff's wife brought suit against him for divorce. This case was tried and resulted in a denial of such divorce. In November, 1920, defendant, with his son Don, about 13 years old, went to Seattle, and about the first

of January, Mrs. Boyd, with her son Glen, about 12 years old, went to Seattle. Strickland met them at the depot on their arrival, and within a few days they went to Portland. After a short stay there they went by boat to San Francisco, where they made a short sojourn, and then went to Los Angeles, and from there to San Diego where they arrived on the 7th day of February, 1921. After some little time Strickland purchased and operated an automobile washing stand and secured lodgings for himself and son in the vicinity. Mrs. Boyd, plaintiff's wife, rented a building and ran a rooming house. The two boys started to school. Not long afterwards plaintiff went to San Diego and brought his son, Glen, back to South Dakota. While in San Diego, plaintiff saw his wife and defendant together, but did not talk with either of them. There is evidence to show, if evidence were necessary, that defendant and Mrs. Boyd were together more or less practically every day and evening while they lived there, and that such relations continued for two or three years.

During the year 1925, plaintiff procured a divorce from his wife, and immediately thereafter defendant and plaintiff's divorced wife married. For his defense defendant pleaded the statute of limitations and also: "That if plaintiff's former wife, Luella, lost her love, affection and regard for plaintiff, it was not because of any acts, conduct, enticement or action of this defendant, but was because of neglect, indifference, bad treatment and incompatibility of plaintiff's said wife by plaintiff." Verdict and judgment were for plaintiff, and from such judgment and an order overruling defendant's motion for a new trial defendant appeals.

It is contended by defendant that plaintiff's cause of action, if any ever existed, accrued whenever it was that plaintiff's wife ceased to have any love or affection for him, and that this could not have been later than when she commenced her suit against plaintiff for divorce; that this was more than six years prior to the commencement of this action, and that therefore this action was barred by the statute. But after plaintiff's cause of action accrued defendant departed from this state and resided in the state of California for a period of two or three years. This time should be deducted from the period fixed by the statute (section 2265, Rev. Code 1919) and when so deducted the action was commenced within the time fixed by the statute.

■ Over defendant's objection the court admitted certain conversations that took place between plaintiff and his wife and between his wife and third parties, but not in the presence of the defendant. Such conversations have been held to be admissible for the purpose of showing the condition of the mind of the alienated spouse and the influence of the defendant over such spouse. Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639; Clendennen v. Bainbridge, 45 S. D. 410, 187 N. W. 727; Maiden v. Boyd, 36 S. D. 451, 155 N. W. 187, and cases cited therein. In these cases the question under consideration is discussed at length, and nothing would be gained by a repetition thereof here.

■ A number of appellant's assignments are based on leading questions. The questions complained of related to the attitude of defendant and plaintiff's wife toward each other when they were together. A witness testified that defendant told him that defendant and plaintiff's wife had spent the night together in a hotel in Aberdeen. The question was: "Did he state why he stayed at the hotel?" This was objected to as leading, and the objection was sustained. The next question was: "Was there any further conversation at that time?" An objection to this question was overruled. The answer should have been "Yes" or "No," but instead the witness answered: "He said he stayed at the hotel as Mrs. Boyd was afraid to stay at the hotel alone." No motion was made to strike out the answer as not responsive, and appellant has nothing upon which to base a complaint. Other questions along this line, and others calling for the conclusion of the witness, were permitted. As a general rule such questions are not permitted, but, where the attitude of one person toward another is the issue involved, leading questions are hard to avoid, and much discretion is allowed the trial court as to the extent to which such questions may be asked, and in the absence of abuse of such discretion the rulings of the trial court will not be disturbed. We do not think such discretion was abused in this case.

■ Appellant complains of the ruling of the trial court in receiving evidence of improper conduct on the part of himself after the alienation of plaintiff's wife's affections for plaintiff had become complete. This evidence did not tend to prejudice appellant. In the first place, it is difficult to fix the exact time when

such alienation became complete, and in the second place his conduct after the alienation as well as his conduct before tends to show his intentions from the beginning of his improper relations with plaintiff's wife.

Insufficiency of the evidence is assigned as a ground for reversal. We think the evidence is abundantly sufficient to support the verdict. It is apparent to us that some time about the year 1918 defendant conceived a violent passion for Mrs. Boyd, and that he determined then to separate Boyd from his wife and marry her himself. From that time on we find him with her on many occasions. Often his own wife or others were present, but frequently they were together by themselves. Until then defendant and his wife had lived together and raised their family. There is no evidence that they were not congenial or happy together. When they left their farm in the spring of 1918, they moved into Bonilla and lived over a restaurant. There is no evidence that defendant and his wife ever had any trouble, but some time during the following year his wife procured a divorce from him. This was about the time plaintiff's wife attempted to procure a divorce from him. One of the witnesses testified that defendant told him in a conversation relative to plaintiff's wife that Mrs. Boyd was a perfect lady, and that he would do all he could to get her to leave Boyd, and that he would give his wife $1,000 more than her share of the estate if she would get a divorce from him.

It is contended by appellant that plaintiff and his wife did not get along together, and that it was his neglect and mistreatment of her that alienated her love and affection for him. There is some evidence that they sometimes disagreed, but it is also true that they always managed to patch up their differences and get along until defendant came upon the scene. They continued to live together, they reared their children, and apparently prospered. But from the early part of 1918 we find defendant in her company more and more frequently, and from that time on she appeared to be no longer satisfied with plaintiff. Up until about that time defendant lived with his own wife and appeared to be content to live with her, but by the latter part of 1919, or some time in 1920, we find that he had mistreated or neglected his wife to such an extent that she procured a divorce from him. Under all the circumstances as shown by this record the jury was warranted in the conclusion

that the defendant deliberately set about to take plaintiff's wife from him and marry her himself.

At the trial portions of the record in the divorce suit brought by Boyd's wife against him, and in the suit brought by him against his wife, were admitted in evidence. Several assignments of error are predicated upon the admission of these records, and a considerable portion of appellant's printed brief is devoted to such assignments. But this matter has no place in this argument, and these records should not have been inserted in the abstract, because upon defendant's motion during the trial these exhibits were withdrawn from the jury, and the jury was admonished not to take them into consideration in their deliberations on the case.

Appellant contends that the verdict is so excessive as to indicate passion and prejudice on the part of the jury. The verdict is $9,000. It may seem somewhat large, but the plaintiff asked for punitive damages. The evidence was such as to warrant the jury in awarding such damages, and there is no way of knowing what part, if any, of the verdict was allowed as punitive damages. The amount of the verdict was a matter for the jury under all the evidence in the case, and we do not think we would be warranted in granting a new trial on account of the size of the verdict.

Newly discovered evidence is assigned as one of the grounds for a reversal. This newly discovered evidence is shown by a number of affidavits set out in the printed record. The matter set out in these affidavits is largely cumulative and with slight diligence might have been produced at the trial. It would probably not change the result if produced at a second trial. The granting of a new trial on this ground is largely discretionary with the trial judge, and we would not disturb his ruling, except where abuse of discretion is shown, which is not the case here.

We believe the defendant had a fair trial, that the case was submitted to the jury under proper instructions, and that the verdict was not excessive.

The judgment and order appealed from are affirmed.

ROBERTS, WARREN, and RUDOLPH, JJ., concur.

CAMPBELL, J. (dissenting). I think that the trial court erred in permitting examination of witnesses by leading questions

to an extent and in a manner that was necessarily prejudicial to appellant. I think also that in several instances error was committed by improper admission of testimony over objection to the prejudice of appellant.

It is undoubtedly true that respondent lost the affections of his wife, but the evidence seems to me insufficient to establish any responsibility of appellant therefor.

Upon the entire record the verdict seems to me so grossly excessive as almost to indicate passion and prejudice, and I think it very plainly indicates that the jury, as a matter of fact, was influenced to the prejudice of appellant by the errors of the court in improper admission of testimony, permitting improper examination of witnesses, etc., and that such prejudicial errors were not cured merely by subsequently striking out a portion of the improperly admitted testimony and directing the jury to disregard it.

I am further of the opinion that there was ample showing to require the granting of a new trial upon the ground of newly discovered evidence.

Upon these considerations I am compelled to the view that the judgment and order appealed from should be reversed, and the cause remanded for a new trial.