SAMUEL FLINDERS, Appellee, v. ASA C. BAILEY, Appellant.

**Husband and wife:** ALIENATION OF AFFECTIONS: EVIDENCE OF DEFENDANT'S WEALTH. In an action for alienating the affections of plaintiff's wife, evidence regarding defendant's wealth is immaterial, and a showing that defendant had stated that he would give all he possessed for the woman will not render it competent; and the error in its admission is not cured by an instruction forbidding its consideration on the question of damages.

*Appeal from Cherokee District Court.*— HON. WILLIAM HUTCHINSON, Judge.

MONDAY, MARCH 11, 1907.

ACTION at law by plaintiff to recover damages for the alienation of the affections of his wife. Trial was had to a jury resulting in a verdict and judgment in favor of plaintiff. Defendant appeals.— *Reversed.*

*J. D. F. Smith,* for appellant.

*Herrick & Herrick,* for appellee.

BISHOP, J.— In the course of the evidence in chief for plaintiff, the defendant was called to the stand, and, over objections, was interrogated at length concerning the character and value of the property owned by him. It was thereby developed that he was the owner of one thousand acres of land valued at $50 per acre, and a large amount of personal property. It is insisted by appellant that here was error, and in our view the contention must be sustained. Ordinarily there could be no purpose in the introduction of evidence respecting the financial condition and ability of a defendant in an action of this character, save to affect the amount of damages to be recovered. And counsel for appellee agree that such evidence addressed to such purpose is incompetent. We have so held in a similar case. *Bailey v. Bailey,* 94 Iowa, 598. And the great weight of authority is that way.

Counsel attempt to justify the admission of the evidence, however, by pointing out that it had been previously testified to by a witness for plaintiff that, on the occasion of a meeting had between the parties in interest occurring some time after the matter of alienation had become the subject of question, the defendant had declared that he "would give all that he had and start with his two empty hands for that woman " — meaning plaintiff's wife. Counsel insist that the sole purpose of the evidence in relation to defendant's property was to give proper force and effect to the declaration made by him as so testified to. And our attention is

called to the fact that, as shown by the record, it was stated
to the court in the presence of the jury that such was the sole
purpose of the evidence. Proceeding from this, it is the
argument that, as the matter of the affection entertained by
defendant for Mrs. Flinders was material matter in the case,
it was proper to introduce evidence tending to disclose the
degree or intensity of such affection; that the form of the
declaration put into the mouth of defendant by the former
witness was such as to open the door for, and make compe-
tent, the evidence objected to, for the reason that the force
of the declaration could not be brought out and made manifest
to the jury in any other way. The argument is ingenious,
but it is not sound. The issue being tried was simply
whether or not defendant had alienated the affections of
plaintiff's wife, and, if yea, what amount of damages had
been sustained. And it is to be noted that the record makes
no suggestion that defendant's wealth had been used in any
manner as an aid to alienation, or that the fact of such
wealth had operated in any degree to induce a change of
heart on the part of Mrs. Flinders. If alienation there was,
it had not only been accomplished long prior to the time of
the alleged declaration, but it had been brought about by
means which were purely personal in character. Now, as we
have seen, the subject-matter of defendant's property was
foreign to the issue, and it is not within reason to say that
plaintiff could bring it into materiality by simply calling a
witness to the stand and extracting from him the statement
that at another time and place he had overheard defendant
declare that his affection for the woman outweighed the
value of his property. In truth, the state of defendant's
affections was not material in the sense of being necessary
to plaintiff's action. It was out of his speech addressed to
Mrs. Flinders, or intended to reach her ears, and his con-
duct as exhibited to her, that had grown the wrong, if wrong
there was. The impression made upon her mind then was

the material thing, and of this she alone could bear witness by words or conduct.

Moreover, it is manifest to our minds — as it must have been to the mind of Mrs. Flinders, conceding that she was present and giving heed to what was said — that, in speaking as he is charged with having spoken, the defendant intended no more than to make emphatic his statement of affection. To that end he employed a metaphor, a mere figure of speech. It was as if, in casting about for an adequate form of expression, he had happened to declare his willingness to cut off his right hand, or for the rest of his life to daily walk 40 miles — alone, barefooted, and over frosty ground — if thereby his heart's desire could be satisfied. It ought not to require argument to make it clear that proof of the use in ordinary conversation of a chance figure of speech, spoken under the circumstances and in the relation as here disclosed, ought not to be given effect to control subsequent litigation, by opening the door for an investigation into a subject-matter otherwise wholly incompetent, because not in issue or related to any point in issue.

It is contended by appellee, however, that, conceding the error, it was cured by an instruction given by the court in the charge to the jury. It is true that the court undertook, in the seventh paragraph of the charge, to limit the consideration of the evidence as to financial worth to the subject of the statement attributed to defendant, and to forbid consideration thereof in connection with the subject of damages. Now, ordinarily we say that an error in the admission of evidence is cured by an instruction directing that such evidence be disregarded, or limiting the consideration thereof to the subject-matter to which alone it may have relation. But the rule is not one of universal application. An error may be of such serious character that an instruction will not cure it. This we have often said. *Martin v. Orndorff,* 22 Iowa, 505; *George v. Railroad,* 53 Iowa, 504; *Hall v. Railroad,* 84 Iowa, 311. Here, as we have seen, the evi-

dence objected to was not competent for any purpose. Should we concede, however, that no serious harm could have followed had such evidence been considered only in the connection as directed by the court in its instruction, still, having regard to the probabilities, we are united in the conclusion that the jury did not observe the limitation prescribed. It is not necessary to say, and we do not say, that they willfully disregarded the injunction. The average man cannot very well avoid being influenced by the knowledge of matters arising within his own experience, or knowledge of which is thrust upon him. He may determine to hew to the line, but in thinking the matter over afterwards the consciousness is forced upon him that, after all, his eyes were taking note of where the chips fell.

Now, it was not proper that the jury should know from an evidentiary source that the defendant was a man of wealth. Having been made aware of it, they could not forget it, if they would. And it would seem that counsel for plaintiff did not intend that they should forget it. As shown by the record, he repeatedly brought forward the subject in the course of his argument, and descanted upon it in form of words and with rhetorical skill well calculated to exert a controlling influence upon the minds of the jury. It is true, he was careful to include an occasional reference to the door through which the evidence had been permitted to enter; but, with the subject committed to the hands of counsel well versed in the art of forensic oratory, it is not difficult to conclude that, following an argument in which defendant's wealth was held up to view, the changes repeatedly rung upon the extent thereof, and the influences usually attending such possessions, the jury may have failed, consciously or unconsciously, to confine their consideration to the straight and narrow path marked out for them by the instruction.

That the matter of defendant's wealth did enter into the question of the amount of damages to be returned, we think is hardly open to doubt. It would seem, from the record

before us, that the affection between the parties was mutual in its origin and development. There is not even a suggestion of any departure from moral lines. Indeed, plaintiff as a witness himself declared that he had no evidence of any illicit relationship, and hence such was not a subject to be considered. Defendant was also a man of family, and the families lived in the same neighborhood, and for many years had been intimate in their associations. On the occasions, as far as made to appear, when the defendant and Mrs. Flinders were alone together, at home or elsewhere, it was with knowledge on the part of plaintiff, and generally with his expressed approval. There is no complaint on the part of plaintiff as against Mrs. Flinders that she was lacking in wifely devotion to him, or that her conduct toward him was marked otherwise than by apparent and consistent wifely affection. At last, plaintiff found a note in the handwriting of his wife, apparently addressed to the defendant, which disclosed to his mind that as between her and defendant the divine passion had taken root and displaced the neighborly friendship, which, as he had supposed, alone existed. According to the evidence for plaintiff, this led to mutual confessions of love. Plaintiff and his wife continued to live together for a short time, but their life was extremely unpleasant. She finally left, as she says because of the unbearable conduct of plaintiff, and he insists because her love for him had been displaced by her love for defendant. This action followed, and there was a verdict for $10,000. In our judgment such verdict speaks for itself, and a conclusion for prejudice is irresistible.

Some other errors are presented in argument. They are either without merit, or are not likely to arise upon another trial. For the error pointed out, the judgment must be *reversed,* and a new trial awarded.