MAY MOIR, Appellee, v. GEORGE R. MOIR, Appellant.

HUSBAND AND WIFE: Enticing and Alienating—Evidence—Declarations of Alienated Spouse. Declarations of a husband (whose affections are alleged to have been alienated) to the plaintiff wife, to the effect (a) that defendant was making trouble between plaintiff and her husband, or (b) that defendant wanted the husband to leave plaintiff, are admissible on *one* issue only, to wit, the condition of the mind of the husband in consequence of any influence which it may be shown, by evidence *distinct from such declarations,* was actually exerted by the defendant.

HUSBAND AND WIFE: Enticing and Alienating—Evidence—Declarations of Alienated Spouse. Declarations of a husband

(whose affections are alleged to have been alienated) to the plaintiff wife are competent to show his affection for his wife.

**HUSBAND AND WIFE:** Enticing and Alienating—Right of Parent
3  to Advise Child—Malice. No parent may be rendered liable for exercising his *natural* right to advise with his child concerning the child's domestic affairs, without proof *by the one seeking to recover* that the parent acted maliciously.

**HUSBAND AND WIFE:** Enticing and Alienating—Evidence—Dec-
4  larations of Alienated Spouse—Hearsay. Declarations of a husband to his wife (who is seeking to recover of the husband's father for alienation of affections) concerning transactions with the father, are hearsay and wholly inadmissible when they have no probative force (a) on the issue as to the husband's state of mind, (b) on the issue of affection between the husband and wife, or (c) on the issue of wrongdoing on the part of the defendant. So held as to declarations of the husband that his father reluctantly gave him money to defray the expenses of the wife in sickness.

**HUSBAND AND WIFE:** Enticing and Alienating—Evidence—Dec-
5  larations of Alienated Spouse. Declarations of the husband, whose affections are alleged to have been alienated, concerning his opinion as to what the members of defendant's family other than defendant had said or done, are wholly inadmissible.

**HUSBAND AND WIFE:** Enticing and Alienating—Evidence—Dec-
6, 9 larations of Alienated Spouse. Declarations of the husband, whose affections are alleged to have been alienated, tending to show what effect the intermeddling of defendant's relatives had on him (defendant) are wholly inadmissible.

**HUSBAND AND WIFE:** Enticing and Alienating—Evidence—Dec-
1, 2, 7 larations of Alienated Spouse.

**HUSBAND AND WIFE:** Enticing and Alienating—Evidence—Ad-
8  missibility. Evidence in an action for alienation of affections that an attorney promised the one whose affections are alleged to have been alienated to write to the defendant and ask him to desist from his efforts to separate plaintiff and her husband, is hearsay.

**HUSBAND AND WIFE:** Enticing and Alienating—Evidence—Dec-
6, 9 larations of Alienated Spouse.

*Appeal from Sioux District Court.*—William Hutchinson, Judge.

November 28, 1917.

Action for damages consequent on the alleged alienation of the affections of plaintiff's husband by his father resulted in a judgment against defendant for $18,000. The defendant appeals.—*Reversed.*

· *Geo. T. Hatley*, for appellant.

*Van Oosterhout & Kolyn* and *T. E. Diamond*, for appellee.

Ladd, J.—I. The plaintiff was married to William Moir, June 10, 1914. He left her December 7, 1915. She had been married before, and had two children by her first husband, Claude Hoeg. Prior to her marriage to William, she had been engaged as his housekeeper from about the middle of February of that year, and was divorced in March. In September, 1914, he adopted her children. They lived on a farm rented from defendant, who resided about three miles distant. The defendant and his wife appear to have raised nine children, of whom William is the third. He had not been healthy, and intellectually appears to be subnormal. According to plaintiff's testimony, she and William had lived happily together, though William tells a different story. In passing on the sufficiency of the evidence to sustain the verdict, however, deductions from the evidence most favorable to the plaintiff must be accepted.

It appears without controversy that William became involved in debt, and in November, 1914, his father paid these debts, and then or thereafter took a mortgage on all his property, signed by him and plaintiff, to secure the payment of these and what William owed defendant and his

*[margin note: 1. Husband and Wife: enticing and alienating: evidence: declarations of alienated spouse.]*

mother for borrowed money and rent, and subsequently furnished William money, on which, in connection with the proceeds of eggs sold and the income from cows, he supported his family.  Of course, evidence of William's complaints in substance that his father was not advancing as much money as he would like, or of the restraints on him in handling his property, owing to the mortgage, could have no bearing on the issues, as defendant was not shown to have failed to furnish the amount agreed upon, nor to have done more in relation to the property than insist that the mortgagor should not sell mortgaged property.  If, as William declared, defendant grudgingly handed over that with which to pay the nurse attending plaintiff when operated on, he violated no duty to either, as he was

2. HUSBAND AND WIFE : enticing and alienating : evidence : declarations of alienated spouse.

under no legal duty to pay the expense incurred.  The testimony of these declarations, and that his father was making trouble between him and plaintiff, or that he wished William to leave her, and the like, together with evidence of sentiments expressed by William in relation to plaintiff, tended to prove the state of his affections toward her and the condition of his mind in consequence of any influence exerted thereon.  But such evidence could not be considered as tending to prove that defendant or anyone else had actually exerted any such influence or had interfered in any manner in his domestic affairs.  As to these issues, such declarations were mere hearsay.  *Sexton v. Sexton*, 129 Iowa 487; *Hardwick v. Hardwick*, 130 Iowa 230; *Miller v. Miller*, 154 Iowa 344.

3. HUSBAND AND WIFE : enticing and alienating : right of parent to advise child : malice.

The circumstance that a child is married does not sever the parents' relations with him.  He may lawfully and is likely always to talk over his affairs, and especially his troubles, even those relating to

his domestic affairs, with them, and the law recognizes the right of parents to counsel their children, even after marriage, and concerning the most delicate relations of life. *Heisler v. Heisler,* 151 Iowa 503, 505; *Miller v. Miller,* 154 Iowa 344; *Busenbark v. Busenbark,* 150 Iowa 7; *Pooley v. Dutton,* 165 Iowa 745. For this reason, more proof is required to sustain such an action against a parent than against a stranger. Even though a father's advice be unsound or foolish, if it be given in good faith, he is exonerated. Moreover, good faith is to be presumed, and malice must in all cases be proven directly, or the circumstances shown to be such that malice may be inferred. *Heisler v. Heisler,* supra; *Geromini v. Brunelle,* 214 Mass. 492 (46 L. R. A. [N. S.] 465, and all cases collected in note).

The burden of proof, then, was on plaintiff to show not only that defendant, by his counsel or conduct, persuaded William to leave his wife, but that in so doing he was actuated by malicious motives. Appellant contends that the evidence was insufficient to carry these issues to the jury.

Upon a separate examination of the record, the members of the court are unable to agree whether there was any evidence from which the inference might properly be drawn that defendant had persuaded his son to abandon plaintiff, or that, if he so did, he was actuated by malice therein, and, as there must be a reversal on other grounds, we have concluded not to review the evidence or pass at this time upon its sufficiency to carry these issues to the jury.

4. HUSBAND AND WIFE: enticing and alienating: evidence: declarations of alienated spouse: hearsay.

II. Plaintiff underwent an operation, on September 10, 1915, at Le Mars, and she testified that her husband visited her every day. She was then asked to relate to the jury what he had said to her, and, over objection, answered:

"Will told me that he had asked for money to pay

the nurse that had been waiting upon me, and he said his father furnished the money very grudgingly."

Motion to strike this out was overruled. The objection to the question should have been sustained, and, as the answer had no tendency either to show the affection or want thereof for plaintiff, or improper conduct on the part of the defendant, the same ruling should have been made on the motion. The defendant was under no obligation to pay the bill, and, if he did so reluctantly, this was no proof of hostility toward plaintiff, or of any design to interfere with her marital relations.

5. HUSBAND AND WIFE: enticing and alienating: evidence: declarations of alienated spouse.

III. Plaintiff testified that defendant's wife came to see her one evening in company with her son, Carl; that she (defendant's wife) told her that the story was going around that she was killing William. She was then asked what William afterward said to her about the visit. Over objection, she answered:

"Well, he said the story that his mother had heard, there was absolutely no truth in it, and he bet his mother had never heard such a story; that it had been hashed up at home to make trouble between us."

A motion to strike was overruled. Manifestly, the ruling was erroneous. Defendant was not responsible for what his wife did, nor what might have been hashed up at home, unless he participated therein. See *Heisler v. Heisler*, supra.

6. HUSBAND AND WIFE: enticing and alienating: evidence: declarations of alienated spouse.

IV. Again, plaintiff related that her husband's cousin from Minnesota and his brother and brother-in-law came to the place one evening; that, after they left, her husband stated how he felt, and also what they wanted him to do.

"Q. Tell the jury what Will said to you in that connection."

, Objection as incompetent, irrelevant and immaterial, and calling for hearsay testimony, was overruled. The ruling was erroneous; for surely the defendant could not be held responsible for what a nephew or son or son-in-law may have said, or for the influence what they said may have had on her husband. The witness answered:

"After they went away, Will seemed to feel very bad, and said that his folks wanted him to leave me right then and there, and go with his cousin, Rufus, that night, on one of the Minnesota farms that his father owned, and said that he felt very bad; that his folks were trying to make trouble between us."

The reference to his folks evidently was directed to the three young men who visited him, and the answer but emphasizes the prejudicial character of the ruling.

7. HUSBAND AND WIFE: enticing and alienating: evidence: declarations of alienated spouse.

V. The plaintiff and her husband passed the night following the visit last above mentioned at Ireton. She was asked:

"You may go on and state what was said there by Will and by Mr. Bailey and by Mrs. Bailey and you there in the presence of each other, as to how Will felt and what he intended to do, and so on."

An objection might well have been sustained to this question because of .calling for evidence that would be improper, but the witness answered pertinently to the issues, and therefore the ruling was not prejudicial.

"Will seemed to feel very bad, and when we got there, seemed to be nervous and excited, and he told my brother-in-law and my sister that his father was insisting on him leaving, and that his folks all had it in for me, and that, if he could have a team and could save the household furniture, and take me and the children and move off the place and let his father have the rest, and he also said that he believed he had the meanest father in the world; that his father was doing all he could to separate him and I."

Such evidence is admissible as tending to show the husband's attachment for plaintiff and the influence of whatever may have been said or done by defendant on the declarant's mind. *Sexton v. Sexton,* 129 Iowa 487; *Hardwick v. Hardwick,* 130 Iowa 230; *Miller v. Miller,* 154 Iowa 344; *White v. White,* 140 Wis. 538 (122 N. W. 1051).

8. HUSBAND AND WIFE: enticing and alienating: evidence: admissibility.

VI. The next morning, plaintiff and her husband drove to Orange City to con sult Attorney Hatley, and she was asked what Will said to Mr. Hatley, and, over objection, answered:

"He told Mr. Hatley that his folks were making trouble between them and trying their best to separate us, and he said his father had a mortgage on everything that he had, and he wouldn't give him any money, and he said he thought lots of his family and he liked to treat them right, but he said no man could treat his family right, he said, and get along without any money at all. He also asked Mr. Hatley his advice as to what he should do, and Mr. Hatley agreed to write a letter to father Moir, telling him to desist from separating us, and Mr. Hatley agreed to and I think he did write a letter to father Moir."

The question was entirely too general, and the answer included much that was not admissible. That defendant held a mortgage on everything was true, but he was under no obligation to give William money save as he undertook so to do, and it was not a matter of his concern that William might not have sufficient money to care for plaintiff. What Hatley may have advised was entirely hearsay, as was his promise to write a letter.

9. HUSBAND AND WIFE: enticing and alienating: evidence: declarations of alienated spouse.

VII. Cornie Milder testified that he had a conversation with William in October, 1915, and was asked:

"Will you state to the jury what that conversation was and how it seemed to af-

fect him; that is, as to whether he felt bad or not?"

The question was objected to as incompetent, irrelevant and immaterial, and as hearsay and as not binding on defendant. The objection was overruled, and the witness answered:

"Well, he said his mother had been down the night before, and they had some trouble, and she called May all kinds of names. He said he didn't say anything, but just let them fight it out, May and his mother; and then he said his mother wanted him to leave May, and he said he wouldn't do that; he said he would sooner quit the farm than leave May. 'Well,' he says, 'we always get along all right, but the old folks didn't seem to like her.'"

A motion to strike the answer was overruled, and, over another objection, the witness was permitted to say that William had "felt bad about that the whole day when he helped us thresh that day. That is what he told me." These rulings were erroneous for that conspiracy between defendant and his wife was neither charged nor proven, and defendant was not responsible for what his wife may have said or done. Because of the errors pointed out, the judgment is—*Reversed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.