### CRIST, an infant, Plaintiff-Appellee v. CRIST et. Defendants-Appellants.

Ohio Appeals, Second District, Franklin County.

No. 3465. Decided October 13, 1942.

Baldwin & Nolan, Columbus, for plaintiff-appellee.
Joseph W. Horner, Columbus, for defendants-appellants.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a money

judgment in favor of the plaintiff and against the defendants in the sum of $1250.00 with costs, after motion for new trial had been overruled. The action was for damages for claimed alienation of affections of George H. Crist, husband of Margery Crist, an infant, brought about by reason of conspiracy alleged against the defendants to accomplish the separation of the husband and wife.

The errors assigned are: Improper admission of testimony on behalf of plaintiff, and that the verdict and judgment are not sustained by and are contrary to the manifest weight of the evidence.

The petition alleges that the defendants maliciously, wrongfully and systematically conspired to destroy the love and affection of George H. Crist for his wife, the plaintiff, Margery Crist, in the particulars set out in the petition. Some of the evidence relates to certain of the express allegations. As to others there is no proof whatever.

Separate answers are filed on behalf of each defendant, but they are identical in subject matter. The answers, after certain admissions and a general denial, specifically assign the reason for the separation to be wrongful conduct toward the husband by his former wife, Margery Crist. The reply to the answers is a general denial. Upon the issues thus drawn the cause was sumbitted to a jury.

During the progress of the trial certain testimony was accepted, found at pages 23, 24, 25, 26, 37, 70 and 71 of the record, to the admission of which counsel for defendants objected and excepted, and this action of the trial judge is made the subject of the first assignment of error.

At page 23 this question was put and answer made:

"Q. (By the Court): Was that before or after you were married? A. That was after we were married. So Herbert came over on the following Sunday and everything was straightened up and we decided to get along real nice, and the following Thursday why Herbert came over in the afternoon and he said, 'Marge, I want my ring back.' "

And at pages 24 and 25:

"Go ahead, Margery. A. So then Herbert went back home, and he had the ring, and I never saw him for several days, and I really worried about him, not knowing where he was, and so I went over and I asked Mrs. Crist nicely if she would tell me where Herbert was, and she says, well, she says, 'he has gone away; you will probably never see him again as long

as you live. He has sued for divorce, and that is all that can be done. You are the cause of it all'; and I went home crying, and called mother, and mother and I got ready and came up to the Court House to see Herbert and ask him why he did that, and he said, 'Well, Marge, as soon as the divorce is over, I will marry you again', because he says, 'It isn't me that is doing it.' "

The Court admitted the testimony instructing the jury that it was accepted only for the purpose of showing the state of feeling existing between the two parties, and admitted other and further testimony of like character with the same qualification and limitation expressed to the jury. The ruling of the Court was inexact though probably not prejudicial. The language imputed to Mrs. Crist, if used by her, was competent to show her feeling toward plaintiff and if a conspiracy was proven, then to show feeling of both defendants toward the plaintiff. The last part of the answer discloses a kindly state of feeling of the husband toward his wife, the plaintiff, notwithstanding the fact that his father was causing him to proceed with his divorce case. There is authority to the effect that statement made by the spouse whose affections are claimed to have been alienated, to the other spouse, which tend to show that he had lost his affection toward that spouse, are competent. Clark v. Clark, (Ind.) 118 N. E. 123. The statement of the husband here is the converse of this proposition.

In **Westlake v Westlake, 34 Oh. St. 621,** the Court held in the 2nd proposition of the syllabus that,

"In such an action (alienation of affections suit) the declarations of the husband, made in the absence of the defendant, as to the cause of his abandoning or putting his wife away are inadmissible."

Some of the foregoing statement is devoted to the reason for the husband instituting his action for divorce against his wife, and some relates to his feeling towards his wife. The statement was very damaging to the defendant, Mr. Crist, and it was a difficult undertaking for the jury to choose and give attention only to so much thereof as was competent for the limited purposes for which is was admissible. The mere fact that Mr. Crist acted as next friend for his minor son in instituting the divorce action did not permit the inference that he had prevailed upon the son to begin the suit. This would be true even though the action was to annul the mar-

riage if the parent, as an individual, was the party-plaintiff. Wolf v. Wolf, 185 N. Y. S. 588, 24 L. R. A. (N. S.) 160.

Later, at page 37 of the record, plaintiff was permitted to answer questions, if she ever wanted to separate from Herbert, her former husband, or if she wanted a divorce from him, both of which she answered in the negative. These questions and answers were likewise proper as tending to show that she at all times had affection for him, did not desire, and was not the activating cause in, the separation and divorce of the parties.

The last testimony objected to is found at page 70 of the record. The question elicited from the witness, Mrs. Clara Swick, a statement purported to have been made by defendant, Rose B. Crist, from an upstairs window of her home during the night season, after the former husband and wife had been out together most of the night, in which statement Mrs. Swick said in part that Margery was "in bed with me in the front bedroom", and then she said (referring to defendant, Mrs. Crist) " 'I will come over and get you in the morning. Why don't you go up in the north end and see who else you can clip', and the child was so nervous and screamed and cried, so I had to hold her in bed." The Court admitted all of the answer except the conclusion as to the condition of Margery and that her mother had to hold her in bed. This testimony, if the statement was made, was admissible as tending to show animus on the part of the defendant, Mrs. Crist, toward her daughter-in-law, the plaintiff. The Court probably should have limited it to that purpose. However, it is not erroneous to admit is as accepted, inasmuch as counsel made no specific request that the Court charge the limited purpose for which it was accepted.

The other testimony objected to at page 71 is substantially of the same nature as that to which we have just adverted. We find no prejudicial error in the action of the Court in accepting the testimony, which is made the subject of the first assignment of error.

The second assignment is to the effect that the verdict and judgment are not sustained by and are contrary to the weight of the evidence.

This is a very difficult record to analyze. The plaintiff, Margery Crist, an infant, was the adopted daughter of Walter W. Swick and Clara Swick, who was her next friend in her action herein. The husband of Margery Crist was George Herbert Crist, and the defendants, Arch B. Crist and Rose B. Crist, were his father and mother. The Crists moved into a new home just across the street from the Swicks and shortly there-

after Herbert made the acquaintance of the plaintiff, and this acquaintance soon ripened into friendship, love and marriage. Both of the parties to the marriage were minors, Margery aged sixteen, and Herbert, aged nineteen. Margery was yet in high school, but wanted to impress Herbert to the effect that she was more mature than her age would indicate. She had a vivid imagination which she gave full sway in her conversation with Herbert. She informed him that she was taking a post graduate course in high school; that she was the Judy Garland of Columbus; that her picture had appeared in the Sunday Star; that she was scheduled for an audition by the Metropolitan Opera Company, and after recounting that a relative had been given a diamond ring to seal an engagement and that some other friend had gone to Kentucky to get married, the young man purchased a ring for $140.00, all the money that he had, presented it to the plaintiff and in a very short time after they had met they went to Kentucky and were married. Upon their return each went to the home of the parents. In a short time the parents discovered the marriage and it was at first decided that Margery should complete her schooling. That plan was not carried out, and the young people moved in with the defendants and lived with them a couple of weeks. They were married on May 1, 1940, and on or about July 15, 1940, defendant, Arch B. Crist, filed suit as next friend for Herbert for divorce against his wife, but the young folks had affection for each other and one night they met, took an automobile ride, were out all night and then returned to their respective homes, whereupon it was evident that the parents on the husband's side felt that they should live together. They moved in with the Swicks, and there remained some four months. Later, they again went to the home of the Crists, but this arrangement was not satisfactory, and they decided to secure a place and live to themselves. The husband then rented one room, pledging his wrist watch to get money for the first week's rent. This arrangement only lasted a short time and one night sometime between midnight and dawn the husband, without any intimation of such purpose, left the plaintiff alone in their room and did not return to her. A short time subsequent thereto the second divorce action was brought by Herbert, by his father as next friend. To the divorce action the plaintiff cross-petitioned and was granted the decree on the ground of gross neglect. Pending the termination of the divorce proceedings, the present action was instituted.

In this suit much of the testimony was admissible, either upon the question of the state of feeling of the alienating spouse toward the other spouse, or the express malice of a de-

fendant toward plaintiff, which did not go to the substantive question, namely, did the defendants alienate the affections of the spouse from the plaintiff.

This case abounds with competent testimony on elements essential to plaintiff's case, which does not furnish any probative evidence of the substantive question to be determined. Such evidence is admissible only to show the effect of interferences with the marital status, if any was shown. 30 O. Jur. 1139; Clark v. Clark, 118 N. E. 123.

Proper inferences must not be limited. On the other hand, they may not be permitted to go beyond the proper restrictions prescribed by the law. Sobolovitz v. The Lubric Oil Co., 107 Oh. St. 204.

Much of the testimony has the natural effect of arousing antipathy toward the defendants, and the greater part thereof is without any weight on the principal question whether or not the defendants by their acts caused the affections of the husband to be alienated from his wife. We grant the right of the jury to resolve the conflicting testimony in favor of the plaintiff. So doing we are not free from the natural reaction of ill feeling toward the defendants because it is obvious that the acts done and statements made by them were obnoxious in the extreme and constituted gross mistreatment of their daughter-in-law. If their liability could be measured on this test alone, there would be no question that it should arise. To be more specific, these are some of the things in this record which, if true, must, and we can not say improperly, have incensed the jury toward the defendants: The refusal of the defendant, Arch B. Crist, to speak to his daughter-in-law for days at a time, his stubborn and uncompromising decision that the divorce action must proceed, and that his daughter-in-law was an unfit person for his son; the statement of the mother to her daughter-in-law, the plaintiff, that her son had gone away, that "you will probably never see him again as long as you live; he has sued for divorce, and that is all that can be done; you are the cause of it all", and particularly the statement of the defendant, Mrs. Crist, that her daughter-in-law, the plaintiff, was "nothing but a damn little golddigger, that she was trash and that was all that she ever would be. I will come over and get you in the morning; why don't you go up in the north end and see who else you can clip", and, again, the statement of Mrs. Crist to the plaintiff when she and her husband were living at the Crist home to the effect that the plaintiff "wasn't any damn good and never was a good wife to Herbert and never would be, and he could have married a lot of decent, responsible girls, if he had not married some adopted

trash"; and finally the threat of the defendant, Arch B. Crist, to expose the lineage of the plaintiff. It must, however, be noted that no one of these statements appears to have been made in the presence of Herbert, the husband, whose affections are claimed to have been estranged, nor is there any proof that they came to his attention. It clearly appears that he was not present nor within hearing on the night that it is claimed that the mother, from her window, abused plaintiff. The action of the defendant, Mr. Crist, respecting the threat to his daughter-in-law occurred after plaintiff and her husband had been separated and could not have operated to bring about their separation.

We then are required to examine this record as to the proof of acts on the part of the defendants or either of them which the jury had a right to find were known to or communicated to the husband of plaintiff. We find only the following: The occasion of the visit of the husband and his mother, the defendant, Rose B. Crist, to the home of plaintiff, who was living with her mother, as to which the jury had the right to find that after Mrs. Crist and her son had learned that plaintiff could not go with him on a trip which he desired her to make. the defendant then said in substance, "Well, if that is the way you are going to act, you may as well give us the rings". This statement was made in the presence of the husband, its effect clearly was to impress him with the fact that his mother did not approve of the conduct of his wife, and to cause him to distrust his wife. The jury had the right to find that the defendant had no basis whatever for such criticism of her daughter-in-law.

With the exception of the inference properly to be drawn that the husband must have observed the refusal of his father to speak to or converse with the plaintiff, we find no act done or statement made by Mr. Crist in the presence of the husband, prior to the second separation, which would have the effect of alienating the husband's affections from his wife. All the other testimony pertaining to defendants' mistreatment of the wife, Mrs. Crist's observations respecting plaintiff's unfitness to be married to the son, Herbert, were not, in so far as the record discloses, brought to the attention of the husband. Concert of action by the defendants is lacking. It thus becomes obvious that the proof of conspiracy on the part of the defendants is meager, if it can be said that it supports such averment in the slightest degree. Likewise, proof is very limited on the essential proposition of overt acts on the part of either defendant operating upon the mind of the husband or brought to his attention, the natural effect

of which would be to cause him to separate from his wife or to lose affection for her.

It is our judgment that although no prejudicial error appears in the trial of the case, the admission or exclusion of testimony, or in the charge of the court, there is not sufficient evidence to support the verdict and judgment. We can not say that there is not a case for a jury, but we are satisfied that the judgment should not be permitted to stand. If this case is retried the trial judge should be very careful to acquaint the jury with the different purposes for which the varied testimony is received, and that the primary and substantive question is whether or not the conduct of the defendants caused the affections of Herbert, the husband, to be alienated from the plaintiff. It will, therefore, be reversed as against the manifest weight of the evidence.

Judgment accordingly and cause remanded.

GEIGER, P. J. and BARNES, J., concur.