SHIRLEE A. GLATSTEIN, appellee, v. BERTHA C. GRUND, appellant.

No. 47907.

(Reported in 51 N.W.2d 162)

542

544

JANUARY 8, 1952.

REHEARING DENIED MARCH 7, 1952.

Volney Diltz and J. R. McManus, both of Des Moines, for appellant.

Emmert, James, Needham & Lindgren, of Des Moines, for appellee.

GARFIELD, J.—Plaintiff, Shirlee A. Glatstein, then about twenty-six, married Dr. Carl C. Grund (a dentist), then about thirty-six, on June 22, 1947, after an engagement of nearly six months and a courtship of several years. March 7, 1949, she was granted a divorce. This law action against Carl's mother for alienating his affections followed. Defendant appeals from verdict and judgment for plaintiff. Most of the errors asserted deal with questions of evidence.

I. Defendant asserts, although not vigorously, the evidence is insufficient for submission to the jury. Of course it is our duty to view the evidence in the light most favorable to plaintiff. Rank v. Kuhn, 236 Iowa 854, 859, 20 N.W.2d 72, 75. See also Stilwell v. Stilwell, 186 Iowa 177, 189, 172 N.W. 177. There is little doubt of its sufficiency when viewed in such light.

In an action of this kind, in the absence of evidence to the contrary, it is presumed husband and wife have affection for each other. Rank v. Kuhn, supra, at page 862 of 236 Iowa, pages 76, 77 of 20 N.W.2d, and citations; Sexton v. Sexton, 129 Iowa 487, 496, 105 N.W. 314, 2 L. R. A., N. S., 708; 27 Am. Jur., Husband and Wife, section 550. Here, there is not only this presumption but much testimony plaintiff and Carl, when married, had strong affection for each other. It is undisputed that at the time of the divorce plaintiff had lost Carl's affections. There is ample evidence such loss was caused by defendant's wrongful conduct or, as we have expressed the rule, that defendant's "misconduct was a substantial factor in causing such loss." Rank v. Kuhn, supra, at pages 857, 860 of 236 Iowa, pages 74 to 76 of 20 N.W.2d, and citations.

It is true more proof is required to support an action of this kind against a parent than against a stranger. This is because of the parent's right to advise a married child. While

a parent may advise a married son in all matters relating to his welfare, including his domestic affairs, such advice must be in good faith and not from malice or other improper motive. Wallrich v. Wallrich, 232 Iowa 762, 766, 767, 6 N.W.2d 107, 109, and citations; 42 C. J. S., Husband and Wife, section 681.

There is substantial evidence of the following. When plaintiff and her new husband were about to leave on their honeymoon defendant clung to her son and between sobs said, "Remember, sweetheart, no one can ever come between us. Remember you belong to me always." Upon their return from the honeymoon to live in defendant's home defendant accused plaintiff of trying to steal Carl away from her, ridiculed the wedding, told them it was disgusting and said she did not like plaintiff's clothes. Defendant insisted the door remain open between the room in which plaintiff and Carl slept and defendant's room, and in other ways denied them privacy. Defendant called plaintiff a nothing, a witch, an outcast, and called plaintiff's family vile names. Because plaintiff was one of eight children defendant likened her to one of a litter of pigs, said it was terrible to have so many children and "there should be a law to kill babies as soon as they were born." Defendant said plaintiff was not to have children nor did she want any child of plaintiff to bear their name. When plaintiff told her husband and defendant she thought she was pregnant, defendant was very upset and insisted something be done about it. Plaintiff was then given pills to discourage pregnancy.

Defendant wrongfully accused plaintiff of taking mail addressed to defendant and instructed those who wrote her to write "personal" on the envelopes. Defendant criticised plaintiff's cooking in Carl's presence, refused to eat it and said it was a waste of food. She also frequently found fault with plaintiff in many other respects. More than once defendant told Carl in plaintiff's presence he married a nothing, he should be ashamed to be seen with plaintiff, he had best get an immediate divorce. Defendant repeatedly ordered plaintiff to leave the home.

There is much evidence defendant and Carl frequently slept together after the marriage. While they deny this, their denials are somewhat qualified. Defendant herself testifies on direct examination that Carl once told plaintiff he was going to sleep

with his mother that night but says she (defendant) told him he had better go to his own room (although the room was occupied that night by plaintiff's mother. There was a third bedroom in the house too.) There is testimony that the night before the marriage Carl, defendant and her other son canceled a reservation plaintiff made for them at the hotel where the marriage occurred of one of two rooms and defendant slept on a cot in the room with her two sons. Defendant said Carl was her husband and belonged to her. Defendant's niece testifies defendant said, "There is nothing Shirlee [plaintiff] can do for him I cannot do." Defendant's sister-in-law says defendant asked on this occasion, "What has she got that I or any other girl hasn't got?" We find no denial of this testimony. In defendant's presence Carl threatened to kill plaintiff if she divulged what went on in the house.

Strenuous efforts were made in different ways by plaintiff, her father, her attorney, defendant's niece and sister-in-law to effect a reconciliation between plaintiff and Carl before and after plaintiff was driven from defendant's home and repeatedly urged to get a divorce, "the sooner the better." This testimony, much of it undenied, is inconsistent with the claim plaintiff was "a gold digger." In the end these efforts were unsuccessful and plaintiff —she says unwillingly—procured a divorce.

It is of course not feasible to summarize all the evidence in a printed record of 800 pages from a trial lasting three weeks. Especially since defendant does not press this claim of error we have mentioned enough to demonstrate the evidence presents a question for the jury. See Wallrich v. Wallrich, supra, 232 Iowa 762, 6 N.W.2d 107; Stilwell v. Stilwell, supra, 186 Iowa 177, 172 N.W. 177; Miller v. Miller, 154 Iowa 344, 134 N.W. 1058; Heisler v. Heisler, 151 Iowa 503, 131 N.W. 676.

While defendant denies much of the above testimony of course the conflict was for the jury to decide. Wallrich v. Wallrich, supra, 232 Iowa 762, 766, 6 N.W.2d 107, 109. There is evidence defendant's reputation for truth and veracity was not good. This was proper for impeaching purposes. Halligan v. Lone Tree Farmers Exchange, 230 Iowa 1277, 1284, 300 N.W. 551, 554, and citations.

II. Defendant asserts error in the admission of hearsay, mainly verbal statements by Carl not in defendant's presence.

We find nothing under this assigned error of which defendant may complain.

■ Of course declarations of one not a party to the action are ordinarily not admissible in evidence. But there are exceptions to the rule. In an action like this, though the husband is not a party, his conduct, as well as defendant's, is directly involved. It is well settled that declarations of the alienated spouse during the period of alienation may be shown as bearing on the state of his mind and affections toward plaintiff and the effect of defendant's conduct upon him. Such evidence is not competent to show defendant in fact exerted a wrongful influence or said or did the things charged. Hardwick v. Hardwick, 130 Iowa 230, 106 N.W. 639; Miller v. Miller, supra, 154 Iowa 344, 134 N.W. 1058; Warren v. Graham, 174 Iowa 162, 156 N.W. 323; Moir v. Moir, 181 Iowa 1005, 1011, 1012, 165 N.W. 221; annotation 82 A. L. R. 825, 829; 27 Am. Jur., Husband and Wife, sections 559, 561, 562; 42 C. J. S., Husband and Wife, section 688b(2).

In admitting evidence of the husband's declarations the trial court carefully limited its consideration to the above purposes for which it was receivable. Such admonition was repeated in the written instructions to the jury.

As to much of the evidence complained of under this assigned error defendant did not urge upon the trial the objection now argued. As to some of it defendant's counsel expressly stated he made no objection except it was repetition. Some of the evidence now complained of was injected into the case by defendant's counsel or was made proper by his cross-examination. He offered and there was received similar evidence of conversations between defendant and her son, not in plaintiff's presence, with counsel's assurance it was proper thus to show their state of mind. When plaintiff's counsel objected as hearsay to a conversation between defendant and Carl, defendant's counsel said, "Oh, hearsay, you are constantly talking about that. We are trying this entire case under the exception to the hearsay rule." (Defendant's attorney upon the trial is not the one who presented this appeal to us.)

■ One complaint under this assigned error deals with an occurrence when plaintiff says she believed she was pregnant. We consider this in Division III hereof. Another complaint deals

with a conversation between plaintiff, her father and Carl in the summer of 1948 in a Des Moines hotel when plaintiff and her father say a reconciliation between plaintiff and Carl was effected. On direct examination plaintiff testified Carl proclaimed his love for her at this conference and agreed to be a good husband. This was clearly proper as showing the state of Carl's affections. See citations last above; also Crist v. Crist, Ohio App., 62 N.E.2d 252, 253.

On plaintiff's cross-examination defendant's counsel injected into the case testimony that in the hotel conference there was talk between her father and Carl about her accusing Carl of sleeping with his mother. This charge formed the basis for defendant's cross-petition against plaintiff and her father in which $50,000 was sought for slander. The trial court dismissed the cross-petition at the close of defendant's evidence and no complaint is here made of such ruling. Evidently defendant's counsel attempted to establish the cross-petition in part by cross-examination of plaintiff. Obviously defendant cannot complain of testimony thus elicited.

Such cross-examination made it proper to show on redirect examination that in the talk at the hotel Carl admitted he had been sleeping with his mother and said he would do it no more. Stumm v. Hummel, 39 Iowa 478, 481; Hofacre v. City of Monticello, 128 Iowa 239, 245, 103 N.W. 488; State v. Rohn, 140 Iowa 640, 646, 119 N.W. 88; 70 C. J., Witnesses, section 858; 58 Am. Jur., Witnesses, section 562.

Further, this last testimony was brought out by a question from the court to which no objection was made and, after the answer was given, defendant's counsel stated he had no objection to its competency, relevancy or materiality but only that it was repetition—an objection not now relied upon. Counsel then added unequivocally "I don't object to the court's question." Later, after an adjournment, counsel moved to strike the answer as incompetent, irrelevant, immaterial and hearsay, adding, "I merely want to make the record." No other explanation was made for the delay in raising the objection.

At best it was discretionary with the court whether to entertain the belated motion to strike, and no abuse of discretion appears in overruling it. State v. Gibson, 189 Iowa 1212, 1225,

174 N.W. 34; State v. Plew, 207 Iowa 624, 627, 223 N.W. 362; State v. Woodmansee, 212 Iowa 596, 613, 614, 233 N.W. 725; Jackson v. Chicago, M., St. P. & P. R.R. Co., 238 Iowa 1253, 1262, 1263, 30 N.W.2d 97, 102, and citations. See also Kuiken v. Garrett, 243 Iowa 785, 804, 51 N.W.2d 149, 160.

We deem unnecessary further discussion in this division of this assigned error.

III. As previously indicated, plaintiff says she told Carl and defendant she thought she was pregnant. They "were both present when I told them." Plaintiff testifies defendant was very upset to hear this and "said something must be done about it." Plaintiff was then asked "What was done about it?" and answered, "I was given pills to discourage pregnancy." There was no objection to the question but a motion to strike the answer as incompetent, irrelevant and immaterial was overruled.

Plaintiff went on to testify, over a like general objection, that after taking the medicine she became ill, also that when Carl and defendant returned home Carl stayed in the bedroom and waited on her but after going downstairs where defendant was he came back angry and said defendant told him plaintiff had lied about her condition and there was nothing the matter with her. After defendant's motion to strike as hearsay, incompetent, irrelevant and immaterial the court said the answer was admitted only as showing Carl's mental state. Upon cross-examination plaintiff says Carl gave her the pills at the instance of his mother.

We find no reversible error in not excluding the answer, "I was given pills to discourage pregnancy." In the first place, no timely and proper objection was made to the question. See Jackson v. Chicago, M., St. P. & P. R. Co., supra, at pages 1262, 1263 of 238 Iowa, page 102 of 30 N.W.2d, and citations. Further, it may fairly be inferred the pills were given plaintiff by Carl at defendant's suggestion in view of her statement "something must be done about it." We cannot accept defendant's contention there is no competent evidence she had a part in giving plaintiff the pills.

Nor did the court err in receiving the remaining testimony above referred to. It was proper to show Carl waited on plaintiff when she was ill as bearing on the then state of his affections toward her. That his attitude changed from kindness to anger

after talking to defendant showed the effect of her conduct upon him. As the jury was cautioned, Carl's declarations were not competent proof of what defendant had in fact said or done.

In support of our conclusion see authorities cited in Division II hereof, especially Hardwick v. Hardwick, 130 Iowa 230, 232, 106 N.W. 639, 640, where we hold admissible the wife's testimony that her husband told her his father (defendant) wanted him to leave her, as bearing on the state of affection between husband and wife and "as tending to prove the effect of defendant's influence, if any, exerted on the son." Similar decisions include Moir v. Moir, supra, 181 Iowa 1005, 1011, 1012, 165 N.W. 221; Sexton v. Sexton, supra, 129 Iowa 487, 105 N.W. 314, 2 L. R. A., N. S., 708; Price v. Price, 91 Iowa 693, 701, 60 N.W. 202, 29 L. R. A. 150, 51 Am. St. Rep. 360.

IV. It is claimed testimony was erroneously received as to defendant's property. In a case of this kind evidence of defendant's property is not admissible to enhance or reduce the damages. Flinders v. Bailey, 133 Iowa 616, 111 N.W. 27; Bailey v. Bailey, 94 Iowa 598, 606, 63 N.W. 341; Phillips v. Thomas, 70 Wash. 533, 127 P. 97, 42 L. R. A., N. S., 582, Ann. Cas. 1914B 800, and note 803; 27 Am. Jur., Husband and Wife, section 565; 42 C. J. S., Husband and Wife, section 688e, page 341.

However, in such an action by the wife evidence of the husband's earning capacity and financial condition is receivable on the question of damages. Harvey v. Harvey, 75 Neb. 557, 106 N.W. 660; 27 Am. Jur., Husband and Wife, section 565, page 168; 42 C. J. S., Husband and Wife, section 693, page 349. See also Warren v. Graham, 174 Iowa 162, 168, 172, 156 N.W. 323.

We find no erroneous ruling under this assigned error prejudicial to defendant.

Incidentally, defendant's answer alleges she owns but little property other than her home and refers to her "humble means." It was repeatedly testified without objection defendant owned her home. Apparently defendant relied upon this as justification for some of the matters complained of by plaintiff. Her counsel stated "As long as they lived on her bounty she had a right to say how it [home] should be run."

On cross-examination of plaintiff, defendant's counsel brought out for the first time that Carl told plaintiff his mother

"was financially independent * * * his father left her plenty to be independent. * * * Carl assured me * * * she * * * did not need his support. * * * they had a joint account in the * * * Bank." Defendant's counsel then asked plaintiff, "So your opinion is Mrs. Grund is extremely wealthy?" to which she replied, "No sir, I have no opinion on her wealth."

On Carl's direct examination as a witness for defendant he said, "Mother and I had a joint account in the bank." On cross-examination Carl testified there was $5700 in this joint account when he returned in 1946 from military service as a dentist. Asked whether there was not another joint bank account of over $590, Carl said he did not remember. He also admitted having $2000 life insurance he believed was paid up.

Obviously, defendant cannot complain of testimony elicited by her counsel. And upon elementary grounds such testimony (on cross-examination of plaintiff and direct examination of Carl) made entirely proper the above cross-examination of Carl, especially since there is much evidence (some of it first brought out by defendant's counsel) Carl repeatedly asserted as a reason for living in defendant's home his financial inability to keep up two homes (his mother's and a separate home of his own).

Further, soon after the above answers were given on Carl's cross-examination they were all stricken upon defendant's motion and the court admonished the jury not to consider "the evidence in respect to those matters." The withdrawal of improper testimony with such an admonition ordinarily leaves no ground for complaint. See State v. Alberts, 241 Iowa 1000, 1002, 43 N.W.2d 703, 705, and citations; Bachelder v. Woodside, 233 Iowa 967, 974, 9 N.W.2d 464, 467, and citations. It is not to be inferred, however, the above cross-examination of Carl was improper in view of his direct examination and other evidence.

The record does not sustain the contention now made that the above testimony was stricken only insofar as it pertained to Carl's property but not as to defendant's. We may add that when plaintiff asked Carl on cross-examination if defendant did not have separate bank accounts defendant's objection was promptly sustained.

V. The trial court did not err in denying a new trial because of claimed misconduct of two jurors, Mrs. Kendall and

Mrs. Saddoris. We will assume, without deciding, the court properly entered an order nunc pro tunc extending the time for filing motion for new trial and the motion was therefore filed in time although plaintiff insists otherwise.

During the trial defendant made affidavit she had received an anonymous telephone call that a friend of her informant had told her a juror named Kendall had said she was for the plaintiff. Defendant's counsel asked the court to interrogate Mrs. Kendall in the attorneys' absence, but with the court reporter, to ascertain her fitness as a juror and said he would abide by the court's decision on such matter.

The court thereupon carefully interrogated Mrs. Kendall and decided there was no question about her fitness to continue as a juror. True to his word, counsel announced he took no exception to her continuing. The court's interview with Mrs. Kendall is in the record and furnishes ample support for the conclusion reached. No error appears here.

In the motion for new trial defendant again challenged Mrs. Kendall's fitness as a juror. By amendment to this motion, filed a month and six days after the expiration of the time for filing such a motion (as extended according to defendant's claim), defendant challenged the fitness of another juror, Mrs. Saddoris, based on an affidavit of a Mrs. Butler and Mrs. Kesterson, who had been dental patients of Carl, that Mrs. Saddoris told them during the trial plaintiff would win the case and Dr. Grund would not practice again in Des Moines. Mrs. Saddoris made affidavit vigorously denying that of Mrs. Butler and Mrs. Kesterson. Oral testimony was heard upon submission of the amended motion for new trial. In general, the testimony, much of it hearsay, produced by defendant does not support the charges against either Mrs. Kendall or Mrs. Saddoris but actually refutes them. The court denied a new trial.

We have repeatedly held where conflicting affidavits are presented in connection with a motion for new trial the trial court is in much better position to determine the facts and we will not interfere, at least unless there is a very clear showing of abuse of discretion. There is no such showing here. That the amendment to the motion for new trial was filed too late need not be considered.

Numerous cases which lend support to our decision include Schnathorst v. Williams, 240 Iowa 561, 583, 36 N.W.2d 739, 751, 10 A. L. R.2d 1199; Hampton v. Burrell, 236 Iowa 79, 88, 17 N.W.2d 110, 116, and citations; Brown v. Metropolitan Life Ins. Co., 233 Iowa 5, 13, 7 N.W.2d 21, 25; Hoegh v. See, 215 Iowa 733, 736, 737, 246 N.W. 787; State v. Umphalbaugh, 209 Iowa 561, 564, 565, 228 N.W. 266. See 39 Am. Jur., New Trial, section 198. See also State v. Rutledge, 243 Iowa 179, 200, 47 N.W.2d 251, 264, 50 N.W.2d 801, and State v. Ebelsheiser, 242 Iowa 49, 60, 43 N.W.2d 706, 713, where we say the trial court's decision as to such a disputed fact question upon conflicting evidence is controlling.

Affiants Mrs. Butler and especially Mrs. Kesterson are subject to censure, to say the least, upon statements in their own affidavit. With full knowledge Mrs. Saddoris was a juror upon the trial then in progress they say in their affidavit they interrogated her about her attitude in the case. What Mrs. Saddoris is claimed to have said was in response to affiants' questions. And it appears quite clearly from their affidavit Mrs. Kesterson at least attempted to influence Mrs. Saddoris to favor defendant. While it is important jurors refrain from talking about a case during the trial, it is absolutely essential there be no jury tampering or other violation of section 723.1, Code, 1950.

VI. Defendant, Carl and his brother, principal witnesses for defendant, all testified in substance that when they went to the Muscatine hotel for the wedding only one room had been reserved for them by plaintiff or members of her family and it was necessary for the three to sleep in that one room. They denied two rooms had been reserved and denied they canceled a reservation for one room. The evidence was apparently intended to reflect on plaintiff and her family by showing their indifference to the comfort of the groom, his mother and brother on this occasion, and perhaps in partial explanation of defendant's criticism of the wedding arrangements to which plaintiff testified or even of Carl's loss of affection for plaintiff.

In rebuttal the hotel room clerk at the time of the wedding said plaintiff reserved a room for defendant and another for Carl and his brother, the Grunds canceled the reservation for the

mother's room and asked that a cot be placed in the sons' room, there were plenty of rooms then available in the hotel.

The room clerk's testimony was proper rebuttal. State v. Rutledge, supra, 243 Iowa 179, 196–198, 47 N.W.2d 251, 262, 263, 50 N.W.2d 801; State v. Mauch, 236 Iowa 217, 227, 17 N.W.2d 536, 541; Churchill v. Briggs, 225 Iowa 1187, 1192, 1193, 282 N.W..280; Cawley v. Peoples Gas & Elec. Co., 193 Iowa 536, 550, 551, 187 N.W. 591. See also sections 622.19, 622.20, Code, 1950; 64 C. J., Trial, section 176.

▮▮▮▮ Defendant is in no position to claim the evidence for her above referred to was upon an immaterial, collateral matter which precluded rebuttal. Apparently it was thought material and important when she and her witnesses testified at length regarding it.

VII. On direct examination defendant testified she did not recall a time she insisted on "going along" when plaintiff and Carl planned to go someplace, she never went with them unless invited. On cross-examination defendant said she did not remember Carl's telephoning the Bobby Grund home to see if she could accompany him and plaintiff to a party there.

Bobby Grund testified in rebuttal Carl called him to ask if defendant was invited to a party there for him and plaintiff. The question as to whether Carl telephoned the witness in regard to the invitation was objected to as incompetent, irrelevant and immaterial, improper rebuttal. There was no objection to the question as to what Carl asked the witness nor motion to strike the answer. The objection of hearsay was not made. See in this connection Kuiken v. Garrett, supra, 243 Iowa 785, 51 N.W.2d 149; Jackson v. Chicago, M., St. P. & P. R. Co., supra, 238 Iowa 1253, 1263, 30 N.W.2d 97, 103, and citations. We are not disposed to hold on this record the admission of Bobby Grund's testimony in rebuttal was error.

▮▮▮▮ VIII. Defendant's answer admits plaintiff was granted a divorce. Copy of the decree was attached to the answer and upon defendant's offer it was received in evidence. (That the decree was admissible see annotation 20 A. L. R. 943, 951.) Defendant offered to prove the judgment for $3000 in plaintiff's favor had been paid. Presumably Carl paid it. The court sustained plaintiff's long objection to the offer. Defendant argues

the offer was proper as bearing on plaintiff's loss of support due to the claimed alienation.

Plaintiff's petition makes no claim for loss of support. Evidence was not offered to sustain such loss as an element of damage nor was it submitted to the jury in the instructions. The jury was told to consider these items—the wife's loss of love and affection, companionship, security and society of the husband.

As stated in Stocker v. Stocker, 112 Neb. 565, 572, 199 N.W. 849, 852, 36 A. L. R. 1063, 1068, cited by defendant, "In the absence of any showing to the contrary, the presumption obtains that the jury did not consider any element of damages that was unsupported by evidence." Since loss of support was not an issue in the case under the pleadings, there is no evidence as to such an element of damage and it was not submitted to the.jury, defendant was not entitled to show payment (presumably by Carl) of the judgment in the divorce decree.

Our conclusion finds some support in Case v. Case, 212 Iowa 1213, 1217, 238 N.W. 85, 87, an alienation suit against the husband's parents where we held the wife could not show the husband had not paid a judgment against him for temporary alimony, saying, "The judgment for temporary alimony was wholly remote from any of the matters involved in this action * * *. * * * and no explanation of what occurred in the divorce action is here material."

IX. Plaintiff offered and there were admitted in evidence five letters written plaintiff by defendant's son Alvin between the time of her engagement and marriage to Carl. Testimony regarding the first of the letters to plaintiff from Alvin during this period was elicited on cross-examination of plaintiff who was asked to produce the letter. It was produced and received in evidence without objection. Defendant offered and there were admitted over plaintiff's objection fifteen post cards written by Alvin to "the Grunds" during the first year of the marriage. This all occurred before plaintiff offered the five letters.

Admission of the first letter from Alvin together with the post cards made the other five letters admissible. The letters are all on the same general subject—Alvin's then friendly and affectionate feeling toward plaintiff. See sections 622.19, 622.20,

Code, 1950; State v. Ebelsheiser, supra, 242 Iowa 49, 53, 43 N.W.2d 706, 709, and citations.

Further, Alvin as a witness seemed unfriendly to plaintiff at the time of the trial. He admitted his affection for plaintiff had changed. The five letters were explanatory of the witness's change of attitude toward plaintiff. They were of course hearsay as to defendant and not binding on her. The court so cautioned the jury. In any event we find nothing in the five letters that could have prejudiced defendant.

X. . It is argued incompetent testimony was repeatedly admitted and the cumulative effect of claimed erroneous rulings was to deny defendant a fair trial. We have already reviewed every error assigned by defendant upon questions of evidence and held it is without merit. It is sufficient to say we find no merit in this added assignment.

XI. Defendant contends the verdict for $15,000 is so excessive as to evince passion and prejudice of the jury.

"A verdict should not be disturbed unless it is so flagrantly excessive as to raise a presumption that it was the result of passion, prejudice or undue influence. [Citation.]" Thornbury v. Maley, 242 Iowa 70, 80, 45 N.W.2d 576, 582. See also De-Toskey v. Ruan Transport Corp., 241 Iowa 45, 49, 40 N.W.2d 4, 6, 17 A. L. R.2d 826, which states it must affirmatively be shown prejudice and passion existed before this court should interfere with a verdict.

We have also said, "* * * only where the award appears to be unconscionable or clearly not warranted by the record should the judgment of the jury * * * be disturbed. * * * Each case must necessarily turn upon its own particular facts." Dunham v. Des Moines Railway Co., 240 Iowa 421, 430, 35 N.W.2d 578, 583, 584; Primus v. Bellevue Apartments, 241 Iowa 1055, 1065, 44 N.W.2d 347, 353. See also Dedman v. McKinley, 238 Iowa 886, 892, 29 N.W.2d 337, 340, and citations, which say the test as to whether we should interfere with a verdict is whether "it is so excessive as to shock the conscience."

27 Am. Jur., Husband and Wife, section 543, page 142, states: "All courts recognize the difficulty, if not the impossibility, of formulating any rule to measure loss of consortium and affections in money, and they recognize that a wide latitude

must be allowed the jury for the exercise of judgment. * * * The tendency of the courts is toward liberality in fixing such compensation."

In two actions for alienation of affections and criminal conversation we have said, "Damages such as may be awarded can but inadequately compensate for such a wrong; and for this reason, courts rarely, if ever, interfere with the measure meted out by the jury." Ruby v. Lawson (Ladd, J.), 182 Iowa 1156, 1161, 166 N.W. 481, 483; Peak v. Rhyno, 200 Iowa 864, 868, 205 N.W. 515.

Amounts allowed in cases of this character are pointed out in annotations 66 A. L. R. 609, 69 A. L. R. 1282.

Several recent decisions state that in considering the size of verdicts account should be taken of the greatly reduced purchasing and earning power of the dollar. Dedman v. McKinley, supra, 238 Iowa 886, 892, 29 N.W.2d 337, 340; Jackson v. Chicago, M., St. P. & P. R. Co., supra, 238 Iowa 1253, 1268, 30 N.W.2d 97, 105; Primus v. Bellevue Apartments, supra, 241 Iowa 1055, 1065, 44 N.W.2d 347, 353; Agans v. General Mills, 242 Iowa 978, 986, 48 N.W.2d 242, 246; Booth v. General Mills, 243 Iowa 206, 210, 49 N.W.2d 561, 563.

The amount of this verdict will not purchase more than about half the same amount would purchase before World War II, nor earn in safe, conservative investment more than about half the same amount would earn when so invested twenty years ago. Thus in terms of purchasing power before World War II and earning power twenty years ago plaintiff's recovery approximates $7500.

The verdict is large. That it may be larger than we, as jurors, would have allowed is beside the point. Agans v. General Mills, supra, 242 Iowa 978, 985, 48 N.W.2d 242, 246. See also Primus v. Bellevue Apartments, supra, 241 Iowa 1055, 1066, 44 N.W.2d 347, 354; 27 Am. Jur., Husband and Wife, section 543, page 142.

We cannot truthfully say under this record the verdict is unconscionable, the result of passion and prejudice or clearly not warranted by the evidence. As stated in Dunham v. Des Moines Ry. Co., supra, 240 Iowa 421, 431, 35 N.W.2d 578, 584, "* * * we feel that under all of the facts in the instant case the award * * * was a fair and honest expression of the jury upon a fact question, submitted to them for a determination and amply substantiated by the record."

Plaintiff's former husband is a dentist with offices in the Equitable Building in Des Moines, a graduate and former member of the faculty of the state university. He was a captain in the Army when discharged in 1946. The jury could have found the marriage was a happy one and in all probability would have so continued except for defendant's wrongful and malicious interference. (Under the court's instructions plaintiff could not recover except upon a finding of malice.) The case is unusual among those against a spouse's parent in that plaintiff pleaded and there is substantial evidence the alienation was effected in part by immoral relations between defendant and plaintiff's husband.

Defendant argues the size of the verdict is the result of numerous alleged errors in admitting immaterial evidence. As stated, we have considered all errors assigned and held there is no reversible error. The record shows no improper attempt to inflame the jury against defendant. There is not only no indication the verdict is the result of passion and prejudice but there are indications to the contrary.

XII. As previously stated, defendant's cross-petition against plaintiff and her father claimed $50,000 damages for slander in telling Carl defendant and he were guilty of immoral relations. Plaintiff moved to strike the cross-petition as against her father on the ground he was not, as the cross-petition alleged, an indispensable party under rule 25, Rules of Civil Procedure, and was a resident of Muscatine County. The motion was overruled. The court ordered the father brought into the case and he filed answer to the cross-petition.

At the conclusion of defendant's evidence the court dismissed the cross-petition because there was no evidence of malice, the statement complained of was a privileged communication and upon other grounds. The court also ruled it then had no jurisdiction of plaintiff's father, who resided in Muscatine County. The father later moved to tax to defendant his attorney fees and expenses in defending against the cross-petition. He has appealed from the denial of such motion.

We affirm the ruling. Attorney fees are not ordinarily taxable as costs in favor of a successful litigant unless authorized by statute or agreement. Addy v. Addy, 240 Iowa

255, 266, 36 N.W.2d 352, 359, and citations. It is not claimed there is any such agreement, but it is said rule 175(a), Rules of Civil Procedure, entitles cross-appellant to the relief sought. These rules have the force and effect of statute. Hubbard v. Marsh, 239 Iowa 472, 474, 32 N.W.2d 67, 68, and citations.

Rule 175(a) provides: "An action brought in the wrong county may be prosecuted there until termination, unless a defendant, before answer, moves for its change to the proper county. Thereupon the court shall order the change at plaintiff's cost, which may include reasonable compensation for defendant's trouble and expense, including attorney's fees, in attending in the wrong county."

A complete answer to any claim to relief under rule 175(a) is that no motion for change to Muscatine County was filed before answer (or at any time). Rule 175(a) makes the allowance of expense, including attorney fees, conditional upon the timely filing of such a motion. Baker v. Chicago J. S. L. Bank, 205 Iowa 1259, 217 N.W. 621; Thornburg v. Mershon, 216 Iowa 455, 249 N.W. 202; Mansfield v. Municipal Court, 222 Iowa 61, 268 N.W. 908; McClinton v. Melson, 232 Iowa 543, 546, 4 N.W.2d 247, 248.

Attention is also called to section 616.20, Code, 1950, which provides, so far as here applicable, that when a personal action is against several defendants, some of whom are residents and others nonresidents of the county, and there is a failure to obtain judgment against such residents, such nonresidents may, upon motion, have said cause dismissed "with reasonable compensation for trouble and expense in attending at the wrong county, unless * * *."

Under this statute a nonresident defendant is not entitled to recover his entire expenses and attorney fees in defending in the wrong county, but only such reasonable allowance as compensates him for being compelled to make that defense in the wrong county. See Prewitt v. Wilson, 128 Iowa 198, 206, 103 N.W. 365; Moyers v. Council Bluffs Nursery Co., 132 Iowa 98, 107 N.W. 924.

Assuming, without deciding, section 616.20 is here applicable since plaintiff was a resident of Polk County, we find no abuse of discretion in denying cross-appellant relief thereunder

inasmuch as he was in attendance at the trial as an important witness for plaintiff in her action against defendant and incurred little added expense in defending against the cross-petition in Polk County rather than in his home county. It is not shown his attorney fees were higher than they would have been in Muscatine County.

One hundred dollars of the costs in this court are taxed to plaintiff's father, Orrie Glatstein, the rest to defendant.—Affirmed on both appeals.

All JUSTICES concur except SMITH, J., not sitting.